## G. G. EWING v. VERNON COUNTY, Appellant.

### Division One, February 25, 1909.

1. **APPEAL: Abstract: No Record Recital: Supplementary Abstract.** Where appellant's abstract did not show by the record proper that the motion for a new trial was filed or that the time was granted to file a bill of exceptions after the trial term, yet, if in due time, appellant files a supplemental or corrected abstract which supplies such omitted record entries, the motion and bill of exceptions are for review in the appellate court.

2. **WAIVER: Motion to Make More Specific: Answer.** By answering over defendant waives his motion to require plaintiff to make the allegations of his petition more specific and definite.

3. **APPEAL: Motions: Proper Receptacle.** If by no record entry it is shown that a motion to make more specific was filed and ruled on, the motion cannot be considered on appeal. Even though the bill of exceptions contains a narrative that the motion was filed, that it was overruled and thereupon the answer was refiled, the motion cannot be considered on appeal, for the bill of exceptions cannot be made a receptacle of matters pertaining to the record proper—matters which the circuit clerk's record should show.

4. **DEMURRER: Motion to Strike Out: Office.** Motions and demurrers seek different remedies. A motion seeks some order of court falling short of the dignity of a judgment; a demurrer raises an issue of law and seeks a trial and judgment on that issue. A motion to strike out may be leveled at many things, such as a frivolous pleading, or trivial or irrelevant matter; but a motion to strike out the petition on the ground that "it does not state facts sufficient to constitute a cause of action," seizes upon the general statutory ground for a demurrer, and a motion should not be used for any such purpose.

5. **RECORDER: Janitor Service.** It is the duty of the county to provide and pay for necessary janitor services for the office of the county recorder; and if the county court will not do that, the recorder may employ a janitor himself, pay him a reasonable compensation for his services, and by suit compel the county to reimburse him for the outlay.

6. **———: ———: Public Duty: Construction of Statutes: By no Litigation as Guide.** There are a few fundamental constitutional provisions that guide in the construction of statutes. One is that government is instituted solely for the good

of the whole people and to promote the general welfare. Another, that private property is not to be taken or damaged for a public use without just compensation. And it is also accepted as a fundamental part of the law that the public health is conserved by cleanliness and wholesome sanitary conditions in public offices; and the statutes require the recorder to "keep" an office, and the word "keep" is one of wide and flexible meaning, to be viewed with common-sense interpretation. These things of themselves argue that the recorder is not to pay for janitor service out of his fees; and, though there is no express statute declaring that the county shall pay for such services, yet as it has come to be almost a universal rule for such services to be paid out of the public purse, the fact that no case has been brought to this court to determine the point, is of itself significant in determining what the statute means.

7. ————: **Stamps.** The stamps used by the recorder in returning deeds to the party to whom they belong, after they have been recorded, should be paid for by the county; and if the county court will not supply the recorder with them, he can buy them himself, and compel the county to reimburse him.

Transferred from Kansas City Court of Appeals.

AFFIRMED.

*A. J. Smith* for appellant.

*Homer M. Poage* and *Scott & Bowker* for respondent.

(1) The record does not show the filing of any motion for a new trial. The mere recital thereof in the bill of exceptions is insufficient. (2) The record does not show the extension of time for filing bill of exceptions after the term at which judgment was rendered. The filing thereof after the term is unauthorized. (3) The law requires the recorder to "keep" his office at the seat of justice. R. S. 1899, sec. 9055. To keep is to preserve—to maintain—to provide for. 18 Am. and Eng. Ency. Law (2 Ed.), 56; Webster's Dictionary. (4) Where the law requires an officer to do what necessitates an expenditure of money for which no provision is made, he may pay therefor and

have the amount allowed him. Provisions against increasing the compensation of officers do not apply to such cases. Thus, it is customary to allow officers expenses of fuel, clerk hire, stationery, lights and office accessories. 23 Am. and Eng. Ency. Law (2 Ed.), 388; Boone County v. Todd, 3 Mo. 140; St. Louis Co. v. Ruland, 5 Mo. 269; Sayler v. Nodaway Co., 159 Mo. 520. (5) An officer may be compelled to perform certain services for which no compensation is provided and for which he can collect nothing, but that is no answer to the proposition that an officer should not be compelled to directly contribute his own means for the public welfare without recompense. Sayler v. Nodaway Co., 159 Mo. 524; Boone Co. v. Todd, 3 Mo. 142.

LAMM, P. J.—Plaintiff sues in two counts. The first asks judgment for $118.90 for the reasonable value of janitor service paid out by him as recorder of deeds of Vernon county during certain years of his term as such officer. The alleged grounds of liability are that the law requires him to keep and maintain his office at the seat of justice of said county; that he did keep and maintain it at the courthouse in the city of Nevada; that to keep and maintain it as required by law it was necessary to employ a janitor to keep the rooms of said office in a reasonably clean and comfortable condition for the use of the plaintiff, his clerks and the public in general; that it was the duty of defendant county to provide such janitor and pay for such services; that prior to a certain date it had performed that duty, but on a certain date and thereafter for forty-nine and one-half months had failed and neglected to perform it, and, through its county court, forbade the janitor of its court house to perform such duties, whereby plaintiff was compelled to hire a janitor to do that work at a reasonable outlay of $2 per month; and, having demanded of defend-

ant that it reimburse him for such outlay, on refusal to so do, he sues.

The second count asks judgment for $94.80, the reasonable value of postage stamps used in the performance of alleged official duties as recorder of deeds during the same years and the further sum of $49.75 for outlays for printed blanks, such as warranty and quit-claim deeds, chattel mortgages and affidavits for the use of applicants for marriage licenses.

The cause was taken on a change of venue from the Vernon to the Henry Circuit Court and, being tried before the Hon. Waller W. Graves, circuit judge, without a jury, judgment went in favor of defendant on the item for blanks, went for plaintiff on the items of outlay for janitor service and stamps; and plaintiff abided it. Defendant not content appealed to the Kansas City Court of Appeals. That court transferred the cause here on a question of jurisdiction—the suit being against a county.

Material record facts will accompany the determination of points made.

I. Plaintiff's counsel argue that the bill of exceptions cannot be considered for that there is no record entry abstracted showing a motion for a new trial was filed nor does any record entry show an extension of time for filing a bill of exceptions after the trial term, as appears to have been the case. The bill of exceptions does narrate those facts, but they appear nowhere else in the original abstract. If this were all, the point would be well made, but it is not all. The cause was briefed in the Kansas City Court of Appeals and after its transfer to this court, on the 27th of June, 1908 (in due time), defendant filed here a supplemental or corrected abstract supplying such omitted record entries. Hence, there is left no substance in the contention, and the point is ruled against the plaintiff.

II.   At the trial (and after answering) defendant filed a motion to require plaintiff to make the allegations in the second count of his petition more specific and definite in mentioned particulars.   This motion was overruled and defendant assigns that ruling for error.   There is no merit in the assignment—this because:

(a)   An answer waives such motion, whether filed before or after the motion.   If defendant desired to file such motion he should have withdrawn his answer and there should be a record entry showing that fact.   There is a narration in the bill of exceptions that the answer was "refiled."   But that narration has no place in a bill of exceptions, *ergo,* is no evidence of the fact that the answer was withdrawn and refiled.

(b)   But, taking the answer as withdrawn before the motion, and as refiled after the motion was overruled, then defendant should have stood on his motion as to the second count.   By refiling his answer he took the life out of his exception on appeal; for it has become a commonplace of appellate procedure that answering over waives a motion to make more specific. [White v. Railroad, 202 Mo. l. c. 561, *et seq.,* and cases cited.]

(c)   But there is another and equally fatal objection to considering the motion,. *viz.*: neither in the original nor in the amended abstract is it shown by any record entry that such motion was filed or ruled on.   True, the bill of exceptions sets forth that such motion was filed.   But a bill of exceptions is no evidence of the filing and the order overruling a motion of that character.   A bill of exceptions, as its very name imports, is a receptacle for matter of exception and for naught or aught else.   Its object is to make that a part of the record which is not already part of it.   It springs up subsequently to the filing of the motion and the order of court entered thereon and

fills no office evidencing such filing or order. [Thompson v. Ruddick, 213 Mo. 561; Stark v. Zehnder, 204 Mo. l. c. 449; Harding v. Bedoll, 202 Mo. l. c. 630; Pennowfsky v. Coerver, 205 Mo. 135, and cases cited.]

III. Defendant assigns for error the overruling of its motion to strike out the petition. Touching this motion, the abstracts show the same condition of things considered in paragraphs *a, b,* and *c* under head of Point II. Hence, for reasons there assigned we ought not to consider it. But it is well enough to add an observation or two. Learned counsel for defendant, not only seeking to widen the statutory rules differentiating motions from demurrers, also hew out a novel path of doubtful use verging from the main-traveled road of general practice. The ground of the motion is that: "said petition does not state facts sufficient to constitute a cause of action." Thus they seize the general statutory ground of demurrer and harness it up for service in a motion to strike out. Now, motions and demurrers seek different remedies. A motion seeks some order of court falling short of the dignity of a judgment, a demurrer raises an issue at law and seeks a trial and judgment on that issue. [Bliss on Code Pleading (3 Ed.), secs. 418, 420, *et seq.*]

A motion to strike out might be leveled at a frivolous pleading, or a second petition that was a departure from the first, or a sham pleading. So, it might be leveled at trifling, trivial, nugatory, redundant or irrelevant matter or matter of duplicity or unnecessary repetition or the like; but it ought not to fill the well-defined and technical office of a demurrer in bringing to the attention of the court demurrable defects in a petition. [R. S. 1899, secs. 598, 608, 611, 612, 613; Bliss on Code Pleading, *supra.*]

The point is ruled against the defendant.

IV.  Defendant objected below to the introduction of testimony on the ground the petition did not state facts sufficient to constitute a cause of action.  At the close of the case it asked peremptory instructions on both counts.  On an adverse ruling on such requests, defendant assigns error.  A determination of these assignments may be logically had under two heads, each of which seeks the facts and the application of the law to the facts.  It may be said plaintiff's evidence under each count tended to sustain the averments of that count and, therefore, the sufficiency of the petition in law and the sufficiency of the evidence to make a case, at bottom mean the same thing.  Defendant put in no proof.

## (a) Of the first count.

The evidence tends to show that the office of the recorder of deeds in Vernon county was in the courthouse in Nevada; that at one time a janitor was provided by the county for that office; that later janitor service was denied to the office by the county court, though a general janitor was provided for the courthouse at public expense; that plaintiff's office was heated by a stove; and that the office was in two rooms, counting the vault.  In the principal room the clerical work was done and, presumably, official business was transacted with the public.  The vault was connected with such room and its floor was several inches lower than that of the workroom.  This jog made it necessary to assemble the vault dirt, shovel it into a bucket and pack it away.  In the vault, presumably, were stored the deed indexes and records.  We are left to infer the reason for the discontinuance of janitor service in that office by the county court.  There is nothing to show that plaintiff caused it by petulant, unreasonable or capricious conduct.  Absent proof pro or con, we are left to indulge in the presumption that the county court took up with the no-

tion that, under the law, the burden of maintaining a janitor service should be lifted from the shoulders of the general public over on the shoulders of the officer himself. If, then, to speak in figure, the drain-pipe of such service can, on a fair interpretation of the statutes and the general policy of our law, be disconnected from the public chest and connected with the private pocket of the officer, then such policy was well enough. Otherwise, it was bad and ought not to receive judicial sanction. In fact the case is put to us by defendant's counsel on the sole theory that it was not the duty of the county to provide a janitor for the office, but that such officer in taking office assumed the burden of warming and cleaning his office rooms for the comfort and health of the general public and the office force, and that his official honor and official fees stood to be diminished by the burden of outlays for such service. It appears that plaintiff's official fees did not equal his statutory salary, and when the county court withdrew the janitor service plaintiff supplied the same at an outlay of $2 a month. There is no contention made that the outlay was unreasonable; the evidence tends to show it was proportionately less than the county was paying for other janitor service in the courthouse. It is shown that for seventeen months of the time plaintiff hired his brother, a deputy in his office, as janitor and paid him $2 a month in excess of his salary as deputy. This feature of the case bespeaks no stress since the evidence shows good faith.

Such is the case on the first count.

It will be seen there is no contention made that the claim is void because it created an indebtedness beyond constitutional limits. The rich and populous county of Vernon has no such infirmity as would entitle it to a constitutional cover of that sort against liability. Therefore the doctrine of such cases as Barnard & Co. v. Knox County, 105 Mo. 382, as limited

by the doctrine of such cases as Lamar Water & Electric Light Co. v. City of Lamar, 128 Mo. 188, is not in point.

It is believed that the fundamental constitutional maxims to the effect that all government is instituted solely for the good of the whole people, is intended to promote the general welfare, and that private property shall not be taken or damaged for public use without just compensation, aided by a common sense construction of statutes evidencing a liberal and wise public policy as over against a narrow, cheese-paring one, have caused a public janitor service paid out of the common purse to be so long and universally used in public buildings and all public offices of cities and counties in Missouri, that the precise point has not hitherto come up for decision. The absence of such cases is of some significance; for a practical administrative policy worked out by the good sense of the thing, well known and uniformly acquiesced in, is not without force in construing our statutes. Show me, said a great judge, what has been done under a deed, and I will show you what the deed means. By the same token, show me what by the concensus of public official interpretation has been done under a statute, and I will show you what it probably means. [Scanlan v. Childs, 33 Wis. 663; Packard v. Richardson, 17 Mass. 144; Donaldson v. Allen, 213 Mo. l. c. 299, 300.]

However, by parity of reasoning, some aid may be borrowed from our decisions; for instance, in pioneer times so early as 1832 the question was here whether it was the duty of Boone county to furnish its circuit clerk a room to keep his office. [County of Boone v. Todd, 3 Mo., star p. 140.] The county refused to supply such room and Mr. Todd, the clerk, furnished one. He presented his account for rent to the circuit court. That court allowed it in the sum of $120. Thereat

the county court refused to draw a warrant and Todd sued out a conditional mandamus. A peremptory writ being finally awarded, Boone county brought error. The judgment was affirmed partly on the theory that the statute, as it then read, required clerks to provide and safely keep and preserve suitable books and furniture "and other necessaries for their respective offies," etc. It was held, in this connection, that a room came under the head of "necessaries" and was as much a necessary as a book to record the judgments of the court. But the decision is also put on larger grounds, *viz.*: that it would be unreasonable to suppose that the Legislature could intend that a clerk should furnish a house to keep the books and papers at his own expenses. It was pointed out that in some instances this might require him to build a house and thus absorb all his official fees, or more. It is said also (Chief Justice McGirk speaking), that to compel him to take his own private property for public use without compensation would be contrary to the Constitution; and that the law gives him his fees for compensation for official services and, so devoting them, did not intend those fees to be diverted or frittered away in providing a house to work in. What was this but holding that the laborer was worthy of his hire, and that the master, the public, should provide a safe and reasonable place and appliances in which to labor?

It St. Louis County Court v. Ruland, 5 Mo. 269, the doctrine of the Todd case was approved. In the Ruland case the clerk furnished fuel for the use of his office. He bought a quantity of coal at twenty-five cents a bushel, for nine cords of wood hauled and sawed he paid out sixty dollars and for another cord sixteen dollars, total, $134.75. The county contended it was not its duty to furnish fuel. But the court, in holding it came within statute provisions relating to necessaries, entered into a learned disquisition on the meaning of that word as relating to a public office,

distinguishing between food and raiment necessary
for the man, and those things necessary to the office
and officer. It should be noted that the Todd and
Ruland cases involve questions peculiar to mandamus
—a discretionary writ—a writ going only when the
character of the act is ministerial and is strictly im-
posed by law. [State *ex rel.* v. McIntosh, 205 Mo. l. c.
610.]

In State *ex rel.* v. County Court of Livingston
County, 51 Mo. 559, a mandamus case, a peremptory
writ was denied. In that case it was sought to com-
pel the county court to issue a warrant on a claim in
favor of the clerk, audited by the circuit court, for
"properly bunching, labeling and briefing the old
papers in the office," as per an order of the circuit
court. It was held, in effect, there was no warrant
of law for a claim to bunch, label and brief, and
(*arguendo*) it was pointed out that the statute
upon which the Todd and Ruland cases were decided
had been modified by amendment. But that case, while
riding off on a strict construction, in nowise weakens
the reasoning of those cases.

In Gammon v. Lafayette County, 79 Mo. 223, it
was held that under a statute providing that the nec-
essary expenses incurred by the probate court for fur-
niture shall be paid by the county, the judge of such
court could compel the county to repay him an out-
lay for a bookcase purchased for his use. In that case
it was argued, as in this, that the party furnishing
the article was the proper party to sue. In answer
to that contention, Judge HENRY said: "Yet the stat-
ute requires the county to pay for it and it can make
no difference that in the first instance it is paid for
by the probate judge. If, for instance, he should need
for his office, in vacation of the court, a load of fuel,
and could not procure it but by payment for it on
delivery, must he freeze in the office or close its doors
or furnish the fuel at his own expense? We are not

inclined to give the statute so narrow a construction.''
See, also, Sayler v. Nodaway County, 159 Mo. 520.

Turning to the sections of the statutes regulating
the office of recorder of deeds, we find them so meager
as to cry out for help by construction. Their terms,
then, must be read in the light of cognate sections and
of the general policy of our laws. By Revised Stat-
utes 1899, section 9055, it is ordained that the re-
corder of deeds ''shall keep his office at the seat of
justice in each county'' and that he ''shall provide
the same with suitable books;'' by section 9061 it is
ordained that the county court shall ''audit and settle
the accounts of recorders for books for the use of their
offices.'' There is not a word in the chapter (chap.
147), relating to providing chairs, desks, pens, ink,
stationery, stoves, racks, tables, spittoons, or other of-
fice paraphernalia. There is even no word relating
to a room in which to keep his office or fuel to heat
it. But when we read other provisions of the general
statutes relating to building a courthouse and heed
the underlying theory that county offices should be
kept there, all questions relating to a room vanish;
and when we read in section 9057 that the recorder
of deeds must give a bond conditioned that he will de-
liver up to his successor among other things ''the fur-
niture and apparatus belonging to the office, whole,
safe, and undefaced,'' we but gather (what we knew
before) that the furniture and apparatus do not belong
to the recorder, but to the county, and under Revised
Statutes 1899, section 1777, are under the control and
management of the county court. Turning to other
cognate sections it becomes plain that unless the Leg-
islature deliberately planned to legislate against re-
corders and in favor of other county officers (an un-
thinkable position), it becomes plain that the county
is to furnish the necessaries in furniture, fixtures, etc.,
to preserve the county records and make them usable
by and useful to the general public. No one read-

ing statutes relating to clerks, probate judges, etc., can come to any other conclusion. [See R. S. 1899, secs. 1647, 1648, 1654, 1662, 1750, 1763, 6710, 522 and 523.] By section 1750, *supra,* the circuit judges in cities having a population of 100,000 may appoint a janitor and the duties of such janitor are to keep the rooms of said court in an orderly and clean condition, etc. We assume that the object of this statute was not to make a statutory rule in favor of order and cleanliness in great cities as contradistinguished from small cities and counties, but was to graft on an exception and take away from the county courts of counties having such cities, the appointment of janitors for courtrooms—*i. e.,* the statute by excepting counties having such cities and vesting the power in the circuit courts to appoint janitors there, recognizes, somewhat by way of a negative pregnant, that the general duty to supply janitor services in other instances rests with county courts.

Finally, we shall assume that among civilized people approved advances and results in scientific research make janitor services in public offices (*i. e.,* the prevention of the propagation and spread of disease from filth), a necessity, and that the Legislature knew and gave effect to that fact. Buildings, under Revised Statutes 1899, section 6710, for clerks' and recorders' offices, being for the preservation of the records of the county, how could this main idea have effect if those records are not to be kept and preserved free from deterioration from filth? Is the general public not interested in and benefited by clean windows, clean floors, clean furniture, clean spittoons, heat in winter and wholesome, healthy air at all times in public offices? It is useless to argue that question. It answers itself. And if the county court, as the agent of the general public in county affairs, without legal right or excuse, refuses to do that duty in the recorder's office, what is the recorder to do? His

only sensible course is to do what this recorder did, *viz.*, avoid an unseemly wrangle, pay it out of his own pocket and trust to the courts and the law to reimburse him. The judgment on the first count is affirmed.

### (b)  Of the second count.

It is argued by defendant that it ought not to pay for stamps used by the recorder in his official business. The evidence discloses that the plaintiff charged up to the county his stamp account for returning recorded instruments to those residing in the county. The evidence further discloses in this case that the county furnished no vault room to keep and preserve recorded instruments. In this condition of things, plaintiff returned them by mail after recording. He seems to have made a distinction between non-residents and residents of the county. As to non-residents he presumably required postage in advance of redelivery by mail. It is stoutly argued that it was not his statutory duty to return recorded instruments at all, even when requested to do so. It is shrewdly (and sourly) suggested in oral argument that if he obliged the general public by the courtesy of the return of a recorded instrument, such act was self-serving and must be referred to future political ambition in currying favor with voters. He is likened to a sower, who sows that he may reap at seed time. But we shall not take this view of it. The legal duty of an officer is to be obliging and courteous. The general welfare of the public demands the application of the idea that *noblesse oblige*. Not only so, but by section 9069 he is required to deliver the deed and its certificate of record, when recorded, "to the party or his order." By section 9089 he is required in certain instances to transmit deeds from one county to another. Conceding there are no fees allowed for the delivery of a deed after recording or for transmitting

a deed from one county to another, yet the statute does not contemplate that he should pay money out of his pocket in the performance of his official duty. Fees are the *income* of an office. Outlays inherently differ. An officer's pocket in no way resembles the widow's cruse of oil. Therefore those statutes relating to fees, to an income, and the decisions of this court strictly construing those statutes, have nothing to do with this case relating to outgo. Such, we take it, is the doctrine of the cases cited in the former paragraph of this opinion, and it comports with reason. Further, if the custom was to deliver a deed to the U. S. Government to be transmitted by mail, as seems to have been the case, then such delivery is reasonably well within the contemplation of the statutory duty to deliver "to the party or his order."

It must not be expected that this court will throw down statutory safeguards for the protection of the treasuries of the counties of this State, or in any way countenance looseness in their business affairs. But on the other hand we shall not construe our statutes so as to produce a harsh or ridiculous result and one not within the fair meaning of our laws.

The conclusion we have come to comports with the general doctrine announced in 23 Am. and Eng. Ency. Law (2 Ed.), 388. "Where," say the editors of that standard work, "the law requires an officer to do what necessitates an expenditure of money for which no provision is made, he may pay therefor and have the amount allowed him. Prohibitions against increasing the compensation of officers do not apply to such cases. Thus, it is customary to allow officers expenses of fuel, clerk hire, stationery, lights, and other office accessories."

The statute relating to recorders ordains that he "keep" his office, etc.; the word keep is one of wide and flexible meaning, one meaning being to maintain, to provide for. It involves the idea of continued

effort in that line, *i. e.*, that the office shall be carried on, enjoyed, etc. In this view of the case, the great breadth of the statutory word "keep" permits of the notion that it was the legislative intent that the recorder of deeds should have the power to maintain and provide for his office in a reasonable way for the benefit of the public, and (by implication) at the public expense, where county courts violate or renounce their duty in that regard.

Let the judgment be affirmed. All concur, except *Graves, J.,* not sitting.