## JOHN T. HARKREADER v. VERNON COUNTY, Appellant.

### Division One, February 25, 1909.

1. **ABSTRACT: Showing Filing of Motion and Bill.** Where the appeal was inadvertently taken to the Court of Appeals, and the abstract filed therein did not by the record proper show that a motion for a new trial was filed or that time was given to file a bill of exceptions after the trial term, and objection was there made to these defects, but after the case was transferred to the Supreme Court appellant in due time filed an additional abstract showing that a motion for a new trial was filed and overruled and that leave was given to file a bill of exceptions and that said bill was filed within the time allowed, both the motion and the bill will be considered.

2. **SHERIFF: Janitor Service.** The sheriff's office is entitled to janitor service at the expense of the county, and it is the duty of the county court to reimburse the sheriff for reasonable outlays for such service.

3. ————: ————: **Sentimental Reasons.** The fact that the sheriff's office was used as a jury room, and for the convenience of witnesses summoned in cases in which rules were made separating witnesses, does not accentuate the county's liability to reimburse the sheriff for janitor services, but is of some sentimental value in pointing to the decent treatment due those called upon to perform the duties of good citizenship

4. ———: ———: **Stamps: Audited by Circuit Court.** The sheriff's bill for janitor services for his office and for stamps used in his official correspondence is not required to be audited by the circuit court before it is allowed by the county court and paid by the county. Such claims do not arise out of some order made by the circuit court, nor are they matters that the court has statutory supervision of.

5. ———: **Light and Water in Jail: Evidence of Agreement Between Sheriff and County Court.** The jail was supplied with water and light by a public corporation, and a disagreement arising between it and the county court as to the prices charged, the court peremptorily ordered the water and lights to be discontinued, but the sheriff arranged with the company to continue the services until he could adjust the matter with the court. *Held,* that whatever agreement was made between him and the court could only be shown by the court's record, and that parol evidence of the presiding judge of the announcement he made from the bench as to the court's decision and the sheriff's acquiescence therein was competent only to show the sheriff's acceptance of the arrangement, and the record failing to show that the sheriff agreed to pay at his own expense for the water and lights, and that the court made no attempt to supply water or light, and the terms the sheriff made with the company being reasonable, he is entitled to be reimbursed for the amount.

6. **JAILS: Sanitary Condition.** The statute (Sec. 8104, R. S. 1899) requiring that jails shall be "kept and maintained in a good and sufficient condition" means "good and sufficient" in a modern sanitary sense; and where the jail is so arranged that its sanitary condition and the health of its inmates depend on connections with the water force in the water mains, and the safety of the jail and the safe-keeping of the prisoners demand a connection with the city gas, the statute requires those connections to be continued when the service can be had at reasonable cost.

Transferred from Kansas City Court of Appeals.

AFFIRMED.

*A. J. Smith* for appellant.

(1) The motion to strike out (demurrer) should have been sustained. The suit is brought by the wrong party. If the sheriff, as jailer, had a right to buy water and gas from the Missouri Water, Light

and Traction Company, he did so as the agent of the county, and the county became debtor to the company for the same. All legal debts made by any officer of a county, in the discharge of his duties as such officer, are county debts. Barnard & Co. v. Knox County, 105 Mo. 390. The same rule would hold good in the case of the purchase of stamps and payment of janitor hire. It will be observed that this suit is not brought on an assigned account against Vernon county. Query: Can a sheriff become the legal assignee of an unliquidated claim against a county? The question involves the construction of secs. 1926 and 2119, R. S. 1899. Under our statutes the county court has control of the county property and the sheriff and jailor, except where it is otherwise provided by law, can use only such conveniences in caring for the prisoners as is provided by the court. R. S. 1899, secs. 1777 and 1800. There are several sections in our statutes providing how a jail may be repaired. R. S. 1899, sec. 8121. Where jail of another county may be used, R. S. 1899, sec. 8125; when and how a guard may be appointed, R. S. 1899, sec. 8123. (2) It was not the duty of the county to furnish a janitor to the sheriff. The janitor work was an incident to the other work of his office. He is paid by fees, and it is a well-established rule of law that an officer cannot charge a fee for services unless the same is authorized by statutes. State ex rel. v. Wofford, 116 Mo. 220; State ex rel. v. McCracken, 60 Mo. App. 650; State ex rel. v. Brown, 146 Mo. 401; State ex rel. v. Mason, 82 Mo. App. 239; State ex rel. v. Smith, 82 Mo. 53; State v. Smith, 15 Mo. App. 412. As to the account for stamps, it will be observed that the office of sheriff is a statutory office. His duties are prescribed by R. S. 1899, sec. 10046. No such duties require the use of stamps, and if it were otherwise it would be only an incident to the performance of duties for which he receives fees. The claim for janitor

hire and stamps is not properly brought for the further reason that the bill should have been audited and allowed by the judge of the circuit court. The room used as an office room was the jury room of the circuit court and the expense for janitor is alleged to be for caring for the circuit court jury room and the sheriff room. R. S. 1899, sec. 1623; County of Boone v. Todd, 3 Mo. 140; State ex rel. v. St. Louis County Court, 42 Mo. 496; State ex rel. v. Smith, 5 Mo. App. 427; State v. Smith, 15 Mo. App. 412. The stamps used, especially those used in business with the circuit court, would be subject to the same rule. (3) The evidence of W. B. Martin and plaintiff concerning the conversation between plaintiff and the presiding judge of the county court offered by defendant should have been admitted. Riley v. Peters Co., 96 Mo. 318. (4) The verdict and judgment is against the law and evidence, the first count is on a *quantum meruit*. Under that pleading the county could only be charged for the amount of water used at the reasonable value of such water. The county could not be charged for flat rates.

*Homer M. Poage* and *Scott & Bowker* for respondent.

(1) The record does not show the filing of any motion for a new trial. The mere recital thereof in the bill of exceptions is insufficient. (2) The record does not show the extension of time for filing bill of exceptions after the term at which judgment was rendered. The filing thereof after the term is unauthorized. (3) A common jail shall be kept and maintained in good and sufficient condition in each county of the State. R. S. 1899, sec. 8104. (4) The sheriff shall be jailer and have the custody, rule, keeping and charge of the jail. R. S. 1899, sec. 8106. (5) The sheriff is bound to exercise ordinary and reasonable care under the circumstances of each particular case

for the preservation of the life and health of his prisoners. 22 Am. and Eng. Ency. Law (2 Ed.), 1306. And he is required to keep the jail clean and to provide food and other necessities for the prisoners. 22 Am. and Eng. Ency. Law (2 Ed.), 1300. (6) Where the law requires an officer to do what necessitates an expenditure of money for which no provision is made, he may pay therefor and have the amount allowed him. Provisions against increasing the compensation of officers do not apply to such cases. Thus, it is customary to allow officers expenses of fuel, clerk hire, stationery, lights and office accessories. 23 Am. and Eng. Ency. Law (2 Ed.), 388; Boone County v. Todd, 3 Mo. 140; St. Louis Co. v. Ruland, 5 Mo. 269; Sayler v. Nodaway Co., 159 Mo. 520. (7) An officer may be compelled to perform certain services for which no compensation is provided and for which he can collect nothing, but that is no answer to the proposition that an officer should not be compelled to directly contribute his own means for the public welfare without recompense. Sayler v. Nodaway Co., 159 Mo. 524; Boone Co. v. Todd, 3 Mo. 142.

LAMM, P. J.—This case is twin to Ewing v. Vernon County, this volume, page 681, and was argued and submitted with that case. Mr. Harkreader was sheriff of Vernon county. He sues in three counts— on the first, for his outlays ($246.15) for gas and water service in the county jail; on the second, for outlay ($18) for stamps used in his official business; and on the third, for outlay ($72) for janitor service in his office at $2 per month—all which several sums he paid out because of the refusal of the county court to supply such water, gas, janitor service and stamps, and for which he demanded and was refused reimbursement.

The case went on change of venue to Henry county and was there tried before a jury—Judge Graves pre-

siding. From a judgment following a verdict on each count, Vernon county appeals.

Any facts material to vital questions raised will appear in connection with their determination.

I. Respondent insists that the bill of exceptions is out of the case because the record proper does not show a motion for a new trial was filed and does not show time was given to file a bill of exceptions after the trial term—the bill being filed subsequently. But, as in the Ewing case, the appeal inadvertently went to the Kansas City Court of Appeals. While lodged there an abstract was filed by appellant and briefs were filed on both sides. Such abstract invited the point raised. However, when the case came here, in due time an additional abstract was filed. We shall consider both and, taken together, they show a motion for a new trial was filed and overruled and that leave was given to file a bill of exceptions and that said bill was filed within the leave granted. Hence, as was done in the Ewing case, so let it be done here. The point is disallowed to respondent.

II. The same points made in the Ewing case relating to filing and overruling motions to make more specific and to strike out, are made here. The pertinent record conditions on those motions are the same in this as in that case, *mutatis, mutandis*. Therefore, for the reasons assigned there, the points are disallowed to appellant here.

III. Moreover, the interpretation given to the statutes construed in the Ewing case, the reasoning employed to support the decision and the result reached are in point in the case at bar. Those reasons and interpretations will not be restated and that case should be read and taken with this. Having reached that conclusion, the judgment should be affirmed out of hand, without more, were it not for certain assign-

ments of error seeking further consideration present-
ly. Such new assignments do not concern the use
of stamps for the official correspondence of the sher-
iff, nor the necessity of, and liability for, janitor serv-
ice for the sheriff's office in the courthouse, but con-
cern the first count. Therefore there is no call for a
reconsideration of the liability of the county for
stamps or janitor service.

The sheriff's office was not only entitled to janitor
service as a public office, under the doctrine of the
Ewing case, but it was used as a jury room and for
the convenience of witnesses summoned in cases in
which rules were made separating witnesses. We do
not deem such use as accentuating the county's lia-
bility but the evidence is of some sentimental value in
pointing to the decent treatment due those called upon
to perform the duties of good citizenship. It is argued
that the sheriff's bill for stamps and janitor service
should have been audited and allowed by the circuit
court. But we are pointed to no provisions of the
statute requiring a preliminary auditing, or *viseing,*
of claims by the circuit court when such claims do
not arise out of some order made by that court or
in some matter that court has statutory supervision
of. A lawsuit, where issues are framed on pleadings
and submitted to a jury under instructions of the cir-
cuit court and a result reached under the solemnities
of the law, is an audit of the very highest order. In
the absence of an express statute requiring a prelim-
inary or another audit, we shall not hold that one was
necessary. The instructions asked by defendant on
the second and third counts were peremptory ones to
find against plaintiff. The instructions given for plain-
tiff on those counts are not objected to as incorrect
propositions of law, provided plaintiff was entitled
to recover at all. Therefore, the instructions need no
consideration, and what is said in the Ewing case

relating to stamps and janitor service is conclusive on those counts.

Accordingly, the judgment will be affirmed as to them.

IV. The case made on the first count is this: Plaintiff as sheriff and *ex officio* jailer resided in the jail. It was a stone building, built in days when there were no public sewers in the city of Nevada and no public service corporations furnished gas or water. There fell a time when it was modernized and enlarged, and when plumbing was put in connecting the sinks, bathtubs, washbowls, flushing tanks, commodes, urinals, etc., with the public service water mains and with the public sewer and the lighting plant—the same corporation furnishing both water and gas. At a certain time during plaintiff's term as sheriff a squabble arose between this public service corporation and the county court. The merits of it are not here. On a certain night without notice to the sheriff and without providing any other water service or water pressure or light of any character, the light and water were shut off from the jail by an order of the county court. When the sheriff came to the jail he found it dark, and, inferring that the court was momentarily disgruntled, he diplomatically thought it best not to interview the court in the sharp edge of its present mood, but to await for the edge of its displeasure to be dulled by second thought in a day or so. But, being in extremity for water and light and having no other means at hand to supply the same, he caused the gas and water connections to be re-established until he could bring the matter before the court at a more auspicious season. This he presently did. The trial court ruled that what the court did on that occasion must appear from its records and not by parol. Accordingly, defendant's counsel introduced a certified copy of the proceedings of the county court. But the record is

dark as to what those proceedings were. There is a
call for them in the bill of exceptions, but they are not
supplied or abstracted. Defendant presently sought
to show from Martin, the presiding justice of the coun-
ty court, while on the witness stand, that when the
sheriff came before the court with his complaints re-
lating to water service and pressure to flush the sewer
connections, etc., and the light, witness told him from
the bench that the county would furnish him ''any
kind of water, any wells dug, dig him any other well,
furnish him with any kind of pump, furnish him with
any kind of light he might desire,'' and thereupon
plaintiff said: ''No, that he was going to use the city
water and the city gas if he had to pay for it him-
self.'' This offer was objected to on various grounds,
among others that the action of the county court could
only be proved by its record, and, even if the evidence
was admissible, it would not be any defense to the
suit because it was the duty of the county court to
*furnish* suitable appliances and not to *make offers* to
do so. Defendant saved an exception to the exclusion
of the oral testimony and the point is here for deter-
mination.

It appears that plaintiff during his official term
from day to day had charge of from one to thirty
prisoners—an average of ten or eleven. The cells
were the usual iron cage cells, one tier above another,
the upper cells being a woman's department and hav-
ing separate sanitary, sewer and water connections.
The jail had a concrete floor and the conventional
caged corridor. The water closets were partly hopper
closets, that is, closets that flushed themselves auto-
matically when used, and partly tank closets, flushed
by pulling a chain. There was a well in the jail yard.
Whether its water was well water, or rain water from
the roof of the jail, or a blend of both, we do not clear-
ly make out. Plaintiff put in proof that its water was
unfit for use when he took charge of the jail; that reas-

onable attempts were made to renovate it and make it usable, but without success; that it was infested with vermin and too close to the sewers; that among other unamiable and repulsive features it was a swimming pool for black worms "similar to a thousand-legged worm, about that long." Being asked how numerous were those worms in the water, plaintiff replied: "They were extraordinarily numerous." There was no evidence tending to show that the county actually furnished plaintiff suitable apparatus to scrub and clean the jail, flush the sewers and commodes in a sanitary way, or furnish suitable water inside the jail for drinking, bathing and other living uses. Defendant did introduce evidence tending to show that some of the county judges drank from this well, now and then, and liked the water very well (*de gustibus non est disputandum*), and its theory was that the sheriff should pack water from the unused well into the jail to wash out the commodes and closets and make the jail inhabitable. Just how the application of the needed water should be timed to the usual incidents and emergencies of jail life arising by routine or by surprise by day and by night is not disclosed. There is no testimony showing that the county court furnished oils, lamps, electric light or any other scheme for lighting—it did put a pump in the old unused well and, with that, rested content in the consciousness of duty well done, leaving the sheriff to wrestle with the problem as best he could. This he did. Failing to have any provisions made, the sheriff continued the use of water and light from the city service, paying a flat rate of $130 per year—the rate prescribed by the service corporation and long in use.

There was competent testimony this was a reasonable rate. There was other testimony tending to show it was an unreasonable one and that it would have been more economical to have put a water meter into the

jail and paid a meter rate. But there is no testimony that the county supplied a meter or sought a settlement of the water crisis by the use of a meter rate.

On such a record it is argued, unsoundly, we think, that the court committed reversible error in not allowing the presiding judge of the county court to testify to the mere offer made to the sheriff through him as a mouth-piece, in the presence of his associates.

It is further argued, unsoundly, we think, that the plaintiff made no case as a matter of law. We think so because:

(a)  The case of Riley v. Pettis County, 96 Mo. 318, is cited as authority for the proposition that the court erred in excluding the offer of testimony, but that case is not in point. It does not hold that the official action, whatever it be, of the county court ought not to be shown by its record. It holds that the mere record of the county court would not bind the other contracting party, if any, and that his assent or refusal to assent might be shown by parol. We are cited to Boggs v. Caldwell Co., 28 Mo. 586; but that case was limited and distinguished in Dennison v. St. Louis Co., 33 Mo. 168, was doubted in Reppy v. Jefferson County, 47 Mo. 66, and its authority still further shaken in Maupin v. Franklin County, 67 Mo. 327. It has not been followed heretofore and we shall not follow it now. At most, under the Riley case and other cases on that line, the offered evidence would be admissible only to show the position taken by the sheriff. We construe that position, in effect, to be that he wanted the court to make some arrangement to reconnect the jail with the city water and light, holding that the existing *status,* the plumbing in the jail, and the sanitary arrangements there, as well as safety and security, demanded such connection; that his idea was that it had to be made "if he had to pay for it himself." Observe, this was all by way of argument on his part. He did not obligate or offer to obligate himself to pay

for it, *contra,* he was in the very act of insisting that the county do it. There was no contract made nor any acts *in pais* that would create an estoppel, nor is any such defense by way of such avoidance set up in the answer.

The ruling was right, and, as no other question relating to the exclusion of testimony is pressed, the point is ruled against appellant.

(b) Nor did the court commit error in sending the case to the jury on the first count. It is hard to use the venerable and tranquil language of the courts in dealing with the facts of the case. The statement of facts shows that the jail had no sanitary relief except by use of the pressure from the city water mains. It is not worth while to argue that jails could be kept in sanitary condition without pressure from water service, if suitable appliances, conveniences and help were supplied for that purpose. Some jails were once kept clean and decent by such simple and homely expedients, and by vigilance and persistent manual effort, but this jail was not arranged that way. To the contrary, it was arranged so that its sanitary condition and the health of its inmates depended on connection with the water force in the water mains, and the safety of the jail and the safe-keeping of the prisoners demanded a connection with the city gas.

In the credited annals of an oriental people, whose history will carry a live dramatic interest as long as men read and ponder upon the phenomena of life and whose ordinances and customs bear high witness to the ethical and physical value of exquisite cleanliness, it is written that every man should sweep before his own door and that, in emergencies springing from the laws of nature, a paddle should be used to make an earth closet. But the statutes of this State recognize a vast advance beyond such primeval simplicity. The face of our legislative policy is turned another way,

and we make no manner of doubt that our statutes contemplate a jail connection with sewers, if that be practicable, and with the water pressure of public service mains, when that is practicable.

Time was when men did not blush to argue that filth in jails (at least in debtors' jails) advanced the underlying purpose of imprisonment. That the more accentuated the uncleanliness of prisons, the more pronounced would be the curative effect on the recalcitrant prisoners; as if one shall be made to wear a tight boot in order to greatly long to put it off, or to drink brine in order that a thirst for water should be sprung. In 1793, Lord Loughborough then holding the Great Seal as Keeper of the Conscience of George the Third, published a treatise, "On the State of English Prisons and the Means of Improving Them," from which Townsend in his Lives of Twelve Eminent Judges, quotes this passage: "The close air and squalid condition of a prison, 'squalor carceris,' were by many considered as the necessary attributes, and even men of respectable judgment have supposed, in the case of debtors, that the filth of the prison was a proper means of compelling them to do justice to their creditors." (Witness the foul Bedford jail where the immortal Bunyan lay and dreamed his immortal dream.)

All such notions are worthless in an age allowing humanity as an essential element in punishment and abhorring cruelty *per se* in laying the law's heavy hand on delinquents.

It is written in the statutes that jails should be "kept and maintained in a good and sufficient condition," etc. (R. S. 1899, sec. 8104), that is, "good and sufficient" in a modern sanitary sense, having an eye to the sure results established by scientific investigation of the disease-breeding effects of filth and bad air. That statute is broad enough to cover the extraordinary condition disclosed by this record.

We are driven to the conclusion there was more pique than principle at bottom in the action of the county court.

Let the judgment be affirmed. It is so ordered. All concur, except *Graves, J.*, who took no part.