Jess Peter Maxwell and National Surety Corporation, a Corporation, v. Andrew County, Appellant.—146 S. W. (2d) 621.

Division One, January 4, 1941.

*J. Harry Latham* and *Fred Maughmer* for appellant.

*G. C. Sparks, K. D. Cross, D. A. Murphy, Charles B. Turney* and *Harding, Murphy & Tucker* for respondents.

160

HAYS, J.—Plaintiffs, a former sheriff of Andrew County and the surety on his official bond, sued defendant Andrew County seeking a declaratory judgment to the effect that they were not liable for the repayment of certain moneys which the defendant claims were illegally paid to the sheriff and his deputies. Defendant filed a counterclaim for reimbursement. The case was referred and the finding

of the referee for plaintiffs both upon their cause of action and on the counterclaim was sustained by the trial judge. Defendant has appealed. Respondents have moved to dismiss the appeal because of defects in the appellant's abstract and brief, which we shall separately consider.

Issues below were joined upon a second amended petition by an answer thereto. Respondents contend that this petition was not properly abstracted. Appellant has followed the rather unusual course of summarizing the allegations of the petition rather than printing it verbatim; but such a practice, while not usually to be recommended, seems to be permitted by our rule 13. Respondents have filed no supplemental abstract from which we can determine the sufficiency of the summary of this pleading made by the appellant.

The abstract of the bill of exceptions contains certain statements which are conclusions of the writer of the abstract as to the legal effect of the evidence. This is not proper practice and the same may be said of appellant's failure to abstract all the exhibits introduced in evidence; but here again we are met by the fact that in the absence of a supplemental abstract we cannot say that the evidence is insufficiently presented to us to enable us to rule the case.

While the complete report of the referee is not included in the record, his formal findings of fact and conclusions of law are set out. It would have been better to have included the entire report, but we cannot hold this omission to be a fatal defect. Again the motion for new trial is not set out in haec verba, but the abstracter says that it was a recapitulation of the errors alleged in the exceptions to the referee's report which are fully abstracted, and that it also alleged error on the part of the trial judge in ordering a compulsory reference. Again the better practice would have been to have set out the whole motion, but in view of the wording of rule 13 we cannot hold that the failure to do so would authorize dismissal.

Our rule 15 requires that the appellant's brief contain: "A fair and concise statement of the facts of the case without reiteration, statements of law, or argument." In certain particulars appellant's brief offends against this rule. The statement does contain argumentative matter, but only in minor particulars. We also require appellant's brief to contain a jurisdictional statement. Such statement should concisely and clearly inform us of the exact ground on which our jurisdiction is claimed to rest, and should refer briefly to the constitutional provisions and decided cases sustaining such claim of jurisdiction. There is no jurisdictional statement in this brief. However, our rule is a very recently adopted one and, in the present case, involving as it does matters of large public interest, we do not feel justified in penalizing its violation by a dismissal of the appeal. We therefore consider the case upon its merits.

▉ Respondent Jess Peter Maxwell served as sheriff of Andrew County from 1933 to 1937. Shortly after taking office he talked to the members of the County Court "with regard to their paying me for the use of my automobile and my deputies' automobiles on calls." The calls referred to seem to have been trips made by the sheriff and his deputies to investigate alleged violations of the criminal law, and, in certain instances, to investigate and report on automobile accidents occurring in his county. The judges told Maxwell to present bills for these matters, which he accordingly did, and warrants were drawn in his favor and in favor of his deputies. On one occasion a United States mail plane was wrecked some ten miles from the county seat. The sheriff went to the wreck and stood guard for several hours. For this he billed the county and received $10. On another occasion the sheriff was paid $75 for delivering ballots to various election officials and he and each of his deputies were paid $25 for delivering notices of election. We find no statutory authority for him to do this work.

No attempts seem to have been made to charge for the use of the sheriff's automobile or those of his deputies on a mileage basis. For example in testifying about the airplane wreck the sheriff said, "It was about ten miles over to where the airplane wreck was, although I went out there early in the morning and like to froze myself to death. Question: You charged $10.00 for that? Answer: That is it. Question: That was $1.00 a mile if you were just being paid for miles? Answer: I couldn't say about that. Question: Well, were you being paid—Answer: For my services. . . . Question: And you tried not to charge any certain rate per mile, but what you thought was reasonable for your services and expenses? Answer: That is right, absolutely. Sometimes I got it and sometimes I didn't." Again he said with reference to the same occasion: "Anybody knows that it did not take $10 to drive out there, but I still say I earned my money."

One deputy testified, "I tried to charge reasonable expenses. Sometimes 5 cents a mile would take care of expenses and sometimes it would not. On exhibit number one in January, 1935, I submitted a bill for $4 for attending the Bolckow Picnic. I don't remember what work I did there. It is about twenty miles to Bolckow. However, I might have gone somewhere else, too." Another deputy testified that he talked to the court and told them: "We could not make these calls. That we were all poor boys and could not afford it. The court later agreed to pay our expenses;" that he thought the bills submitted were reasonable. On cross-examination he said: "Question: Now then, how much per mile did you charge when you made a trip? Answer: I didn't have any definite rate. However, I did try to keep my bill within a certain limit. Question: What limit? Answer: I thought $75.00 was plenty for me. Question: Then you did not try

to maintain your bills or make your charge at any definite rate per mile, but tried to hold yourself to around $75.00 per month? Answer: That is right."

The record does not contain all of the items paid to the sheriff and his deputies but it does show that from October, 1934, to December, 1935, the sheriff personally received $1281.50 on bills of the kind mentioned, and that during the same period one deputy received $1147.20.

Shortly before the present suit was filed the county court had taken the position with the sheriff that it was entitled to recover back the money paid to him and his deputies. For this reason the present declaratory judgment action was filed seeking a judicial determination of nonliability. At first Maxwell was the only plaintiff, but in an amended petition the surety on his official bond joined with him. The second amended petition, upon which the case was tried, prays for a declaration that the above mentioned payments for the sheriff and his deputies were lawfully made and that Maxwell was entitled to retain the money. (Note that the deputies were not parties of record to this proceeding and their rights cannot be determined therein.) The petition also asked an alternative declaration to the effect that even though such expenses were incurred without express warrant of law they were allowed by the county court under the belief that they had been legally incurred and that the obtaining of such money did not constitute a breach of Maxwell's bond.

The trial court entered a declaratory judgment to the effect that the county court was authorized by law to pay the sheriff and his deputies the sums above mentioned and that Maxwell and the deputies had a right to receive the money so paid. It also declared that the payment of money did not constitute a breach of Maxwell's official bond and it found against the county on its counterclaim.

In the first place it is plain that the payments here in question were not made by virtue of any expressed contract of the county with Maxwell and his deputies, for no entry of record as to such contract was ever made by the county court. [Nodaway County v. Kidder, 344 Mo. 795, 129 S. W. (2d) 857; State ex rel. West v. Diemer, 255 Mo. 336, 164 S. W. 517.]

Respondents, however, contend that it was the duty of the sheriff to investigate complaints as to alleged criminal law violations. They say that since this duty is imposed by law on the sheriff, and since the statute makes no provisions for compensation to be paid him for the performance of such duty, he is entitled to be reimbursed for his reasonable expenses in connection with such activities. It is true that the sheriff is under a legal duty to investigate alleged crimes and to suppress crime and arrest felons. In speaking of the duties of the sheriff at common law Blackstone says (1 Com. 344): "He may and is bound *ex officio* to pursue and take all traitors, murderers, felons

and other misdoers and to commit them to goal for safe custody. He is also to defend his county against any of the king's enemies when they come into the land; and for this purpose as well as for keeping the peace and pursuing felons, he may command all of the people of his county to attend him.'' Our statute (Sec. 11518, R. S. Mo. 1929) reiterates this rule in the following language: ''Every sheriff shall quell and suppress assaults and batteries, riots, routs, affrays and insurrections; shall apprehend and commit to jail all felons and traitors.''

But our statutes do not provide any compensation for the work which the sheriff may have to do in thus preserving the public peace. [Secs. 11791, 11792, R. S. Mo. 1929.] They do provide that the sheriff in executing a warrant placed in his hands by a court or magistrate shall be allowed certain fees and mileage, but in performing his duty as a conservator of the peace and in detecting and apprehending without warrant, as he may in certain cases, persons guilty of crime, he is not by statute allowed compensation.

It is well established law that the right of a public officer to be compensated by salary or fees for the performance of duties imposed on him by law does not rest upon any theory of contract, express or implied, but is purely a creature of the statute. [Gammon v. Lafayette County, 76 Mo. 675; State ex rel. Evans v. Gordon, 245 Mo. 12, 149 S. W. 638; Sanderson v. Pike County, 195 Mo. 598, 93 S. W. 942; Jackson County v. Stone, 168 Mo. 577, 68 S. W. 926; State ex rel. Troll v. Brown, 146 Mo. 401, 47 S. W. 504; Bates v. City of St. Louis, 153 Mo. 18, 54 S. W. 439; Williams v. Chariton County, 85 Mo. 645.] In this connection we may point out in passing that the sheriff's deputies are public officers who perform the duties and are subject to the liabilities imposed upon the sheriff himself by law. [Scott v. Endicott, 225 Mo. App. 426, 38 S. W. (2d) 67.]

It is true that there are certain decisions in which it has been said that where an officer in performing a duty enjoined on him by statute necessarily expends his own funds, there being no statutory provision for meeting these expenses out of the public treasury, he may be reimbursed for such expenses. [Boone County v. Todd, 3 Mo. 140; St. Louis County v. Ruland, 5 Mo. 268; Gammon v. Lafayette County, supra; Sayler v. Nodaway County, 159 Mo. 520, 60 S. W. 1057; Ewing v. Vernon County, 216 Mo. 681, 116 S. W. 518; Harkreader v. Vernon County, 216 Mo. 696, 116 S. W. 523; Motley v. Pike County, 233 Mo. 42, 135 S. W. 39; Buchanan v. Ralls County, 283 Mo. 10, 222 S. W. 1002; 46 C. J. 1018.] A careful review of these decisions, however, discloses that they are based upon a construction of the particular statutes involved and hold that by reasonable implication they permit payment of some particular item of expense. For example, by statute certain county officers are entitled to maintain their offices in the court house, and we have held that these statutes

impose upon the county court the duty of furnishing janitor service and telephone service for such officers.

■ Even if, as indicated in the Vernon County case, supra, there might exist a quasi contractual right not based on statute under which the officer may be reimbursed for expenses, such right would be limited to the recovery of money actually paid out by the officer in the purchase of equipment which was reasonably essential for the performance of his duties.

The statutes regulating the compensation of sheriffs expressly provide for the payment of mileage in certain cases. For example, such provision is made when the officer is serving subpoenas or writs or transporting a prisoner to the penitentiary. The specification in the statute of instances when mileage is to be paid and money lawfully be received by the sheriff constitutes an implied prohibition upon its collection in other instances. Particularly is this true when we consider the provisions of Section 11793, specifically limiting the compensation to be received by sheriffs.

■ It may be argued that such a construction of the statutes would place an undue hardship upon law enforcement officers. That the enforcement of the criminal law by the locally elected sheriff is a vital public concern is obvious. But if a hardship to the law enforcement officers is involved this is a matter for the consideration of the Legislature and not the courts. He who accepts public office takes it *cum onere*. We are constrained to hold therefore that the payments made to the sheriff in this case were illegally made. In Nodaway County v. Kidder, supra, we held that under similar circumstances an officer who had received compensation not specifically allowed by statute might be required to repay the same to the county in an action for money had and received. A declaratory judgment of nonliability was therefore improper.

The situation is somewhat different, however, as to the rights and liability of the surety on the plaintiff's bond. That bond was conditioned upon the proper performance by the sheriff of his official duties. The only breach alleged was the collection by the sheriff of the compensation to which he was not legally entitled. This compensation was paid him by the county court upon a bill duly presented and allowed, although improperly allowed.

A similar question was passed upon by this court in the case of State v. Gomer, 340 Mo. 107, 101 S. W. (2d) 57. Action was there brought upon the bond of an assessor worded almost identically with this bond. The breach alleged was that the assessor had received certain items of compensation to which he was not lawfully entitled. It is true that the overpayments there were due to a mistake in interpretation of the statute, while the payments here were illegal because made with absolutely no statutory authority. But in both instances the mistake was a mistake of law honestly made. In the

Gomer case we held that there had been no breach of the bond and that the surety thereon was not liable. A judgment in favor of the surety on the bond in this case would therefore have been proper.

■ Appellant also assigns error upon the action of the trial court in ordering a reference. Appellant contends that there was no dispute between the parties as to the amount of the payments to Maxwell and hence no necessity for the taking of an account. The original action was one for a declaratory judgment. ''Relief by declaratory judgment is *sui generis*, and while not either strictly legal or equitable, yet its historical affinity is equitable.'' [Liberty Mutual Insurance Company v. Jones, 344 Mo. 932, 130 S. W. (2d) ·945, l. c. 954, citing Borchard on Declaratory Judgments, pp. 137, 138, 172, 178.] In the present case, however, the defendant's counterclaim was purely a legal one, being in the nature of *indebitatus assumpsit* and maintainable as such. But it does not appear in the record as preserved by the abstract that the parties were in substantial agreement as to the items of the account. The account was long and involved. Any dispute as to its items would make the settling of the account necessary and would warrant a compulsory reference. In the absence of a clear showing in the record we cannot convict the trial court of error upon that ground.

We hold that the trial court erred in rendering a declaratory judgment of nonliability in favor of the plaintiff Maxwell, although such a judgment in favor of plaintiff National Surety Corporation was proper. We also hold that the judgment in dismissing defendant's counterclaim against Maxwell was erroneous. It is not quite clear from the abstract as to whether the counterclaim counts only on an alleged breach of the bond or is sufficient to enable the county to recover for money had and received. In any event the referee made no finding as to the amount due the county, and. did not even consider such a question since he found that no liability on the part of either Maxwell or his surety existed. For this reason the cause will have to be retried as between Maxwell and the appellant. We have therefore reached the conclusion that the judgment of the trial court should be affirmed as to respondent National Surety Corporation and reversed and the cause remanded as to the other parties. It is so ordered.

All concur.