STATE ex rel. WILLIAM W. GARDINER, Petitioner, v. JOSEPH F. DICKMAN, Sheriff, Respondent.

St. Louis Court of Appeals. Argued and Submitted June 2, 1913. Opinion Filed June 17, 1913.

1. PARTIES: Who May Become. Generally speaking, any person may become a party to proceedings in which he has an interest.

2. INSANE PERSONS: Inquisition: Proper Informants. The right to file an information as the basis of an *inquisition de lunatico,* under Sec. 474, R. S. 1909, is confined to one who has an interest either in the estate or the personal safety of the person proceeded against.

3. ———: ———: ———. In an *inquisition de lunatico,* instituted against a mother on the information of her daughter, *held* that if the determination of the question were open to the court, it would be held that the daughter was a proper person to file the information, under Sec. 474, R. S. 1909, in view of the fact that a daughter has an interest in the care and welfare of her mother.

4. PROBATE COURTS: Judgments: Conclusiveness. The same presumptions of validity must be entertained in respect to the judgments and orders of the probate court in matters relating

State ex rel. v. Dickman.

to the administration of estates as are accorded to the judgments and orders of the circuit court.

5. ———: ———: ———: **Insane Persons.** In an *inquisition de lunatico*, under Sec. 474, R. S. 1909, instituted against a mother on the information of her daughter, the determination of the probate court that the daughter was a proper person to file the information is not open to question or review in collateral proceedings.

6. **INSANE PERSONS: Jurisdiction of Probate Courts.** Under Sec. 34, Art. VI of the Constitution of Missouri, the jurisdiction of probate courts in *inquisitions de lunatico* is as complete and plenary as it is in the administration of the estates of decedents.

7. ———: **Inquisition: Nature of Proceeding.** An *inquisition de lunatico*, under Sec. 474, R. S. 1909, is not an *ex parte* proceeding, but is a "suit," in the technical meaning of that term; the informant being one party and the person proceeded against the other.

8. **ACTIONS: "Ex Parte Proceeding:" Definition.** An *"ex parte* proceeding" is one taken or granted at the instance and for the benefit of one party only, and without notice to, or contestation by, any person adversely interested.

9. **INSANE PERSONS: Inquisition: Right of Informant to Take Depositions.** An *inquisition de lunatico*, under Sec. 474, R. S. 1909, being a suit in which the informant is a "party," the informant has the right to take evidence by depositions, in accordance with Sec. 6384.

10. **DEPOSITIONS: Securing Attendance of Witnesses: Attachment.** A notary or commissioner before whom depositions are being taken, pursuant to Sec. 6384, R. S. 1909, has the power to compel witnesses to attend the hearing and testify.

*Habeas Corpus.* Original Proceeding.

WRIT QUASHED AND PETITIONER REMANDED.

*Barclay, Fauntleroy, Cullen & Orthwein* for petitioner.

(1) A hearing before a commission of lunacy of a person under indictment who pleads insanity is not within the meaning of a statute allowing the taking of depositions to be used upon the trial of an "action,"

"issue" or "indictment." People v. Haight, 13 Abb. N. C. (N. Y.) 197; Ex parte Alexander, 147 S. W. 521; In re Attorney, 83 N. Y. 164; Galbreath v. Block, 89 Ind. 300. (2) The term "parties" includes all persons who are directly interested in the subject-matter in issue, who have a right to make defense, control the proceedings, or appeal from the judgment. Strangers are persons who do not possess these rights. Hunt v. Haven, 52 N. H. 162. A "party" to an action, within the meaning of the Code of Procedure, is one who is named plaintiff or defendant, and appears on the record as such. Woods v. DeFiganiere, 16 Abb. Pr., 1 Robt. (N. Y.) 607. (3) The word "suit" as used in Act Cong. March 3, 1875, chap. 137, sec. 2, providing for the removal from a State court into a Federal court of any suit of a civil nature by law or in equity, where the matter in dispute exceeds, exclusive of costs, $500, does not include a writ of *habeas corpus.* Kurtz v. Moffitt, 115 U. S. 487, 505.

*Leahy, Saunders & Barth* for respondent.

(1) Sec. 476, R. S. 1909, provides for two proceedings to have persons declared insane, either *ex parte* or *inter partes,* the former proceeding being declared unconstitutional. Hunt v. Searcy, 167 Mo. 158. (2) Sec. 6384, R. S. 1909, provides that any party to a suit pending in any court may obtain the deposition of any witness to be used in the suit. The informant is a party to the action pending in the probate court. On her information and affidavit, the process of the court issues. Sec. 481, R. S. 1909. (3) Sec. 529, R. S. 1909, provides for the manner of proceeding in the event the person charged with being insane is a nonresident. Clearly, to establish the fact of the insanity of the person so charged it would be necessary to take testimony of persons acquainted with the alleged in-

sane person, who reside at the home of the person so charged. (4) This suit is a civil proceeding. State ex rel. v. Holtcamp, 235 Mo. 233. It being a civil proceeding, under the statute authorizing the taking of depositions in this State, any party in interest has a right to take depositions. Eckerle v. Wood, 95 Mo. App. 378; Ex parte Gfeller, 178 Mo. 264. Issues are not necessary to the taking of depositions. The only requisite is that the case has been regularly instituted, and is not finally disposed of. Ex parte Munford, 57 Mo. 603; Ex parte McKee, 18 Mo. 599.

REYNOLDS, P. J.—A daughter of a Mrs. Miller filed an information in the probate court of the city of St. Louis, in and by which it is stated that Mrs. Miller is a person "so indicted (*sic*) to habitual drunkenness and is of unsound mind, and incapable of managing her affairs; that she is the owner of property in the State of Missouri of the value of about $200,-000;" that informant prays that an inquiry thereinto be had, according to the statutes in such case made and provided. This was duly sworn to by the informant. We assume that Mrs. Miller was duly served with notice of this information, as no point of lack of notice is made, and it appears that after the filing of the information a notice was served upon her attorneys by the attorneys representing the informant, of the taking of depositions in the case. Afterwards, on application of the attorneys for Mrs. Miller, a commissioner was appointed before whom the depositions were to be taken. No point is made as to this appointment. The testimony of several witnesses appears to have been taken before the commissioner, and a subpoena was issued by him directed to Gardiner, the petitioner here, summoning him to appear as a witness in the matter before the commissioner at a day, time and place named. Gardiner not appearing, the commissioner-

issued a writ of attachment to compel his attendance, which writ was placed in the hands of the sheriff of the city, who executed it by taking Gardiner into custody, and the sheriff being commanded in the writ to have the body of Gardiner before the commissioner at the place, time and day mentioned in order that he might testify touching the issues involved in the matter of Mrs. Miller's sanity, was proceeding to do so, when Gardiner sued out a writ of *habeas corpus*.

It is alleged in the petition for that writ that the detention by the sheriff was unlawful and that the petitioner is unlawfully deprived of his liberty, it being charged that the attachment issued was unlawful and the restraint illegal because the depositions so attempted to be taken were illegally and improperly being taken, the statutes of this State, as it is alleged, not giving an informant in a proceeding involving an inquiry as to sanity the right to take depositions. The writ of *habeas corpus* was issued by one of the judges of this court and by agreement of counsel a day in term set for the hearing. At the day set the petitioner appearing in person and by counsel, and the sheriff appearing by counsel, the cause was argued and submitted to the court.

There are only two questions involved in this case. First, is the proceeding in an inquisition to pass on the mental soundness of the party "a suit pending in any court in this State?" Second, is the informant "any party to" such suit, so that our statute applies? That section (Sec. 6384, R. S. 1909) provides: "Any party to a suit pending in any court in this State may obtain the deposition of any witness, to be used in such suit, conditionally." Counsel for petitioner assume the negative on both these propositions.

The first proposition is settled authoritatively for us by our Supreme Court in State ex rel. Peper v. Holtcamp, Judge of Probate Court, 235 Mo. 232, 138

S. W. 521. There it is held that the proceedings under which an inquiry into the sanity of a party are had, is not only a suit or action but is such a ''civil case'' as under the amendment of 1909 to section 28, article 2, of our Constitution, authorizes the return of a verdict by the jury impanelled to try the issue on the concurrence of three-fourths of the members of the jury. It is not only a suit in the full sense of that term, but is not an *ex parte* proceeding. [See Hunt v. Searcy, 167 Mo. 158, 67 S. W. 206.]

The second question as to whether the informant is a party to such suit has not been directly settled by any decisions of our Supreme Court or of the appellate courts, to which our attention has been directed or which we have been able to find on our own research. The learned and industrious counsel for the petitioner have cited us to a number of cases from the courts of other States in which it is held that these proceedings are *ex parte* and that the informant cannot control them even to the extent of dismissing them after they have been commenced, notwithstanding, as under our statute, the informant is responsible for costs incurred in the prosecution of the inquiry. That is the case of Galbreath v. Black, 89 Ind. 300. So it has been held as to proceedings against attorneys for disbarment. [See In re Attorney, 83 N. Y. 164.] Speaking generally, however, any person having an interest in the matter may be a party in proceedings in which that party has an interest.

In the case of Peter Covenhoven, a lunatic, 1 N. J. Eq. 19, it is said (l. c. 21): ''It is clear that a stranger has no right to interfere in a proceeding of this nature. He can neither sue out a commission, nor can he make himself a party to it by any application he may make to this court.''

Our section 474, Revised Statutes 1909, under which this inquiry is instituted, is very broad; it con-

tains no limitation as to persons who may file the information. It allows anyone in interest to give the information, while section 477 makes it the duty of certain officers to do so. This in no manner restricts the initiation of proceedings to officers, but is in addition to the general right given by section 474 to anyone; by "any one" we hold with the New Jersey court, that these words should be taken to confine the right to some one having an interest in either the estate or the personal safety of the party proceeded against; that it is not granted to a mere stranger.

Here the information was filed by a daughter of Mrs. Miller. Surely she is not "a stranger" and surely she has an interest in the care and welfare of her mother. If the determination of the question of the interest of the informant was here open to us, we would have no hesitation whatever in holding that the relationship of daughter to mother was of such a close character as to give the daughter an undoubted right to institute the inquiry.

But that question of interest is not here open to our inquiry. In Eckerle v. Wood, 95 Mo. App. 378, 69 S. W. 45, Judge Barclay, speaking for this court and passing on the question as to whether the party who had commenced proceedings under the provisions of section 74, Revised Statutes 1899, now section 70, Revised Statutes 1909, for discovery of assets, was a person interested in the estate, has said (l. c. 386):

"That, however, is a question not open for our consideration in this suit for a prohibition. The probate court, by the terms of the statute under discussion, has authority to cite the person charged, and require him to answer interrogatories after the filing of an affidavit of the executor or administrator or 'other person interested in any estate.' It made the citation in the instance under review upon the affidavit of . . . the husband of the deceased. The order in

that behalf amounts to a decision by the probate court that he is interested in the estate. On that fact depends the right to proceed. But whether the decision of that fact by the probate court is right or wrong cannot properly be reviewed in a proceeding for a prohibition,'' citing cases.

The same may be said of the action of the probate court in entertaining this proceeding, when that action is challenged here and when we are examining it under the *habeas corpus* act. It has long been the established law in this State, ''that the same presumptions of validity must be entertained in respect to the judgments and orders of the probate court in matters of the administration of estates as are accorded to the judgments and orders of the circuit court.'' [Henry v. McKerlie, 78 Mo. 416, 1. c. 429.] This case along with several others is cited and referred to by Judge WOODSON, who in his dissenting opinion in In re Estate of Jarboe v. Jarboe, 227 Mo. 59, 1. c. 99, 127 S. W. 26, says:

''Under the constitutional provisions cited (provisions relating to the powers of the probate court) this court has many times held that the jurisdiction of probate courts is original and exclusive over all matters pertaining to executors and administrators and all matters purely probate; and that while acting within their jurisdiction their power and authority is just as full and complete and their judgments are entitled to the same weight and exempt from collateral attack in the same degree as are those of any court of general jurisdiction.''

After citing the Henry case, supra, along with several others in support of this, Judge WOODSON adds that there are more than a hundred cases in which our Supreme Court has so decided. While this is in a dissenting opinion, the majority opinion was not contrary to the proposition but differed from those of Judges

VALLIANT and WOODSON only in the application of the principle.

By section 474, if the information is filed with the probate court, that court may cause the facts to be inquired into, "if satisfied that there is good cause for the exercise of its jurisdiction," and having acted in the present case, we are concluded on any inquiry as to the right of, or interest in, the informant to institute the proceedings.

The jurisdiction of the probate courts in inquisitions of sanity or insanity is as complete and plenary as it is in matters of administration. It is vested in that court by our Constitution, which, by section 34, article 6, ordains that the probate courts established by law "shall have jurisdiction over all matters pertaining to probate business . . . the appointment of guardians and curators of minors and persons of unsound mind." The opinions above referred to in the Henry and Jarboe cases and those there cited, are bottomed on this Constitutional provision. So that the probate court having entertained the information of this daughter of Mrs. Miller, the fact of the interest of the informant, and of her right to be a party to that proceeding, is conclusively settled so far as this procedure under *habeas corpus* now before us is concerned.

The reasoning underlying the decision of the Supreme Court of Indiana in the Galbreath case, supra, is thus stated by that court at page 301: "But the proceeding before us is not, in any sense, an action within the meaning of the civil code, and, therefore, we think the section cited is not applicable to the case in hand. This is an *ex parte* proceeding under a special statute, and has few of the qualities or attributes of a civil action." This was in answer to the contention of the informant in that case that she had a right, having filed the information and instituted the pro-

ceeding, to dismiss it or to take a nonsuit before the case was finally submitted to the jury.

But in the Holtcamp case, supra, our Supreme court decided that this proceeding was a civil action and in Hunt v. Searcy, supra, it is distinctly decided that a judgment of insanity, without notice to the person adjudged insane and without appearance, is void, whether the statute requires such notice or not; it is so absolutely void that it can be attacked in collateral proceedings. We cannot construe these two decisions other than as holding that these proceedings for the determination of sanity are, under our law, not only suits within the meaning of that law, but are so entirely "suits" in the technical meaning of that term, that they cannot be proceeded with *ex parte*, that is to say, on one side only, by or for one party. The informant being one "party" and the one proceeded against necessarily being in court by notice, being the other and contesting party, they do not come under the definition of *ex parte* proceedings. "A judicial proceeding, order, injunction, etc., is said to be *ex parte* when it is taken or granted at the instance and for the benefit of one party only, and without notice to, or contestation by, any person adversely interested." [Black's Law Dictionary (2 Ed.), p. 452, title Ex Parte.]

It is true that our court has said, In re Crouse, 140 Mo. App. 545, 120 S. W. 666, that the statute concerning the adjudication of insanity is complete in itself and must be looked to in testing the proceedings in such a case. The point in decision in that case was confined to the question of the right of appeal in such cases. We held that under the peculiar provisions of the statute that right did not exist. Beyond deciding that point there is nothing in the decision in the Crouse case here applicable.

Ever since the existence of our statute governing proceedings in inquisition of sanity or insanity, witnesses have been heard, testimony taken. The statute itself provides that by section 474, Revised Statutes 1909, which is the one authorizing proceedings on information of a private person before the probate court, that on the information being filed praying for an inquiry, if the probate court is satisfied that there is good cause for the exercise of its jurisdiction, it "shall cause the facts to be inquired into by a jury." This in itself means that testimony is to be heard. How heard? We have in our State only two ways by which testimony may be "heard;" one *ore tenus;* the other by deposition. Testimony given by either mode is lawful. The law recognizes no distinction between them. Section 6384 gives any party to a suit pending in any court of this State the right to obtain testimony of witnesses to be used in such suit, conditionally. This is as broad as language can make it. If, then, there is a suit pending and the informant is a party to it, the right to take depositions is given as fully and as broadly, at least by necessary implication, as is the power to produce witnesses and introduce testimony. In no case before our courts that has been reported, is it suggested that it was not within the power of the informant to summon witnesses to attend the inquiry. That right has always been recognized as in the informant. The right existing, the statute prescribes the mode of its exercise, by subpoena and production of the witnesses in court; by deposition, in the event that their presence cannot be had or in the event it is desired to secure their testimony in advance of the trial.

In Ewing v. Vernon County, 216 Mo. 681, l. c. 689, 116 S. W. 518, it is said that the absence of cases on a practice long followed by our courts and people is of some significance. Says Judge LAMM: "Show me

what by the consensus of public official interpretation has been done under a statute, and I will show you what it probably means." As there said, so it may here be said, "by parity of reasoning, some aid may be borrowed from our decisions." Thus in Morris v. Morris, 128 Mo. App. 673, 107 S. W. 405, the question arose as to the right of appeal by the informant from a judgment taxing costs of many witnesses against her, the information having been dismissed. While it is there held that the right of appeal did not exist, there is no intimation that the informant did not have the right to call witnesses. That right seems to be there conceded. In the many cases in which insanity inquiries have been before our appellate courts and in the great majority of which it appears that they were contested and the testimony of witnesses produced by the informant as well as by the party proceeded against heard, there is no intimation to the effect that each party had not a right to produce witnesses.

The power to compel attendance of a witness or party before a notary or commissioner and secure testimony, is undoubted, as see, in passing, Ex parte Gfeller, 178 Mo. 248, 77 S. W. 552. We hold that the proceeding, looking to an inquiry into the sanity of a person, is a suit, within our law; that the probate court having ordered the inquiry to proceed on the information of the daughter has determined conclusively for us here the right of the informant to institute that proceeding; that she is a party to a suit within the meaning of our law and as such can take and preserve testimony relevant to that inquiry by depositions.

It follows that the writ of *habeas corpus* heretofore issued must be quashed and the petitioner remanded to the custody of the sheriff, to be by him produced before the commissioner as a witness, there to remain and abide the lawful orders of the commissioner. *Nortoni* and *Allen, JJ.,* concur.