JOSEPH M. PAINTER, Appellant, v. VIRGINIA PAINTER, Respondent.

Springfield Court of Appeals, January 1, 1921.

1. **INSANE PERSONS:** Probate Jurisdiction to Inquire as to Mental Competency Does not Exclude Jurisdiction of County Court. Constitution article 6, section 34, giving probate court jurisdiction to adjudge as to unsound minds, does not exclude like jurisdiction in the county court by virtue of section 36, giving the county court jurisdiction of all county "and such other business as may be prescribed by law," and Revised Statutes 1909, section 1411, superseded by Acts 1919, p. 182, enacted in pursuance of the authority of said section 36.

2. ————: Judgment of County Court as to Mental Competency cannot be Annulled by Action in the Circuit Court Against the Affiant. An adjudication of insanity by the county court cannot be annulled by an independent action in the circuit court against the individual on whose affidavit the county court proceeded; the public being a necessary party, and the proper remedy being by *certiorari*.

3. ————: Plaintiff May not Maintain an Action to Annul an Adjudication of Insanity no Longer Operative and not Res Judicata. Plaintiff may not maintain an action to annul an adjudication of insanity, where his petition discloses he is no longer held by process thereunder or injured in property thereby, the adjudication being then inoperative, and not being such an order or final judgment as was *res judicata* when rendered.

Appeal from Circuit Court of Dade County.—*Hon. B. G. Thurman*, Judge.

AFFIRMED.

*McCammon* & *McCammon,* and *C. H. Landrum* for appellant.

(1) As illustrating the point that in no case where a suit was brought to annul a decree or judgment has any one but the parties to the original action been made a party to an annulment suit, we cite the following: Robertson v. Robertson, 163 S. W. 266, 178, 478; Blass v. Blass, 186 S. W. 1094, 194 Mo. App. 624; Dorrance v. Dorrance, 148 S. W. 94, 242 Mo. 625; Same case, 165 S. W. 783, 257 Mo. 317. (2) The allegation of the petition is, that defendant was the informant and made the affidavit on which the county court issued its warrant and arrested. plaintiff. An insanity proceeding is a civil or suit. State ex rel. v. Holtcamp, 138 S. W. 521, 235 Mo. 232. And that the one filing or being the proceedings "is a party to it" is held in State v. Dickman, 157 S. W. 1012, 175 Mo. App. 543, where the court said, 157 S. W. 1113: "There are only two questions involved in this case: First, is the proceeding in an inquisition to pass on the mental soundness of the party," a suit pending in any court in this State? Second: Is the informant "any party to such suit so that our statutes applies"? (The case arose upon a notice to take depositions.) That section (Sec. 6384, R. S. 1909) provides: "Any party to a suit pending in any court in this State may obtain the deposition of any witness, to be used in such suit conditionally." "In the many cases in which insanity inquiries have been before our appellate courts, and in the great majority of which it appears that they were contested and the testimony of witnesses produced by the informant as well as by the party proceeded against, heard, there is no intimation to the effect that each party has not a right to produce witnesses. The power to compel attendance of a witness or party before a notary or commissioner and secure testimony is undoubted, as seen in passing, Ex parte

Gfeller, 178 Mo. 248, 77 S. W. 552. We hold that the proceeding looking to an inquiry into the sanity of a person is a suit, within our law; that the probate court having ordered the inquiry to proceed on the information of the daughter has determined conclusively for us here the right of the informant to institute that proceeding; that she is a party, to a suit within the meaning of our law and as such can take and preserve testimony relevant to the inquiry by deposition.'' State v. Dieckman, 157 S. W. 1012, 175 Mo. App. 543; State ex rel. v. Guinotte, 165 S. W. 718, 257 Mo. 1. (3) The county court has no jurisdiction to inquire into the sanity of the plaintiff herein. The act which purported to give the county court jurisdiction to inquire into the sanity of persons without property has been decided by the Supreme Court in a case directly involving its validity, to be unconstitutional, and in the most positive and emphiatic language. In Redmond v. Railroad, 126 S. W. 159, 225 Mo. 721, the court, after quoting the constitutional provision, Sec. 34, Art. 6, and the amendment of 1903 to R. S. 1899, sec. 3650, Sec. 474, R. S. 1909, said: By that section, Sec. 34, Art. 6, full jurisdiction is conferred on probate courts to appoint guardians and curators for persons of unsound mind. What the Constitution has given, the General Assembly cannot take or curtail. The Constitution does not limit the jurisdiction of the probate court to cases in which the insane person owns property, but the jurisdiction is over all such persons. The probate court cannot appoint a guardian of an adult person until it has ascertained that he is insane, and jurisdiction to appoint the guardian necessarily carries the jurisdiction to institute and carry through the inquiry as to his mental condition. An insane person needs a guardian of his person even though he has no property, or property interest to be protected. Where jurisdiction is conferred by the Constitution the General Assembly has power to prescribe the procedure in which that jurisdiction is to be exercised, but the proviso aimed to be added to that section by the

Act of 1903 is not the prescribing of a procedure but a curtailment of the jurisdiction which the Constitution conferred." (4) In State v. Woodson, 161 Mo. 454, that court said: "In that section (Sec. 1, Art. 6) the Constitution disposes of all the judical power of the State in matters of law and equity and it leaves nothing to be disposed of by the General Assembly." In State v. Ry. Co., 162 S. W. 144, 253 Mo. 642, the court said: "The power of the General Assembly to enact laws is subject in all matters to the limitations of the Constitution of of this State whether they be expressed by prohibitory clauses or by affirmative provisions relating to the matter in hand. Both methods of restriction are equally binding on the law-making powers and no valid law can be enacted by it which contravenes either." In State v. Locker, 181 S. W. 1003, 266 Mo. 243, the court said: "It may be therefore safely asserted as a rule that the Legislature as to the constitutionally recognized courts can neither add to or take from the jurisdiction provided for such courts by the Constitution." In State v. Tincher, 166 S. W. 1031, 258 Mo. 1, the court after expressly approving the Redmond case quotes and approves the utterance of one of the great judges of the State in an earlier day, respecting the constitutionally created courts thus: "In the first place . . . the jurisdiction of this court is defined and limited by the Constitution. It has such powers and jurisdiction as the Constitution has conferred upon it—no more, no less. It cannot shirk any duty imposed upon it by the organic law, nor can it extend its powers to take cognizance of any matter not within the scope of its limited authority. The Legislature can neither add to nor diminish its rightful jurisdiction. That body can invest it with no jurisdiction when it is not given by the Constitution, nor can they deprive it of its appellate jurisdiction. . . . By parity of reasoning it would seem that this rule should apply with equal force to any other constitutional court whose powers are definitely defined as is the case

in regard to probate courts, section 34, Art.,6, Con. Mo.''
In State v. Brasher, 201 S. W. 1153, 200 Mo. App. 127,
this court, following the decisions of the Supreme Court,
has fully recognized their application to a proceeding
such as this. (5) Another question was raised by the
defendant—that an appeal from the county court to the
circuit court might have been taken, or a writ of error
prosecuted; but those remedies were not available at the
time this suit was brought and the injury to plaintiff's
*status* and to his reputation, and the damage to him in
depriving him of the means of making a-living are con-
tinuing, and a court of equity is the only place where
he can obtain relief. It is also said that plaintiff has
been discharged from the asylum and plaintiff is relieved
from all burden and responsibility and that the judgment
sought to be annulled is satisfied. It is true the incarcera-
tion and confinement in a madhouse is over; but the
judgment that plaintiff was insane stands on the records
of a court apparently valid, still is referred to, still is
told to those who might seek his services as a physician
—a stigma on his name, a bar to his employment, and
will continue as such until by a higher court the judg-
ment is annulled, the bar beaten down, and the stigma
blotted out and his *status* as a man restored. In Warren
v. Order etc. of America, 201 S. W. 368, this court order-
ed restitution to the defendant of money it had paid to
the plaintiff voluntarily on a judgment, and cited unani-
mous precedents therefor. In Colburn v. Yantes, 176
Mo. 670, the Supreme Court rendered a judgment compel-
ling restitution in a similar case.

*W. B. Skinner* and *Mrs. Kathrine Halterman* for
respondent.

(1) Where a judgment was obtained by due process
of law, no defense having been made, or an unavailing de-
fense, such judgment cannot be set aside or vacated by a
bill in equity. Wilkerson v. Whiting, 7 Mo. 295; Smith v.
Sims, 77 Mo. 269; Railroad v. Mirrielees, 182 Mo. 141.

(2) But if the judgment has been obtained by fraud, or if the court had no jurisdiction, the rule is otherwise and relief may be had. Orvis v. Elliott, 65 Mo. App. 96; Shertz v. Kirtley, 62 Mo. 417; Bates v. Hamilton, 144 Mo. 1; Fears v. Riley, 148 Mo. 49; Railroad v. Mirrielees, 182 Mo. 126. (3) In order to set aside a judgment for fraud, in direct proceedings, however, it must appear that the fraud was practiced in the very act of obtaining the judgment. Fears v. Riley, 148 Mo. 49; Railroad v. Mirrielees, 182 Mo. 126. (4) "In each county there shall be a county court which shall be a court of record, and shall have jurisdiction to transact all county and such other business as may be prescribed by law. The court shall consist of one or more judges, not exceeding three, of whom the probate judge may be one, as may be provided by law." Constitution of Missouri, Art. 6, Sec. 36; 1. R. S. 1909, page 98; Adopted in 1875, R. S. 1909, section 3845. (5) County courts have full and complete jurisdiction in the matter of sending such of the insane poor to the State hospitals and asylums as may be entitled to admission thereto. R. S. 1909, section 1411 to 1422, inclusive; Laws of 1911, page 115; Laws of 1919, page 182. (6) County courts are vested with judicial powers and their judgments cannot be collaterally attacked. Constitution of Missouri Article 6, section 1, R. S. 1909, page 85; Benton County v. Morgan, 163 Mo. 661; McKenzie v. Donnell, 151 Mo. 431. (7) An implied limitation on the legislature's power to enact a certain statute must be so clear and unmistakable as to make possible no other reasonable construction of the language used than that the power to enact the statute does not exist. A possible inference of its non-existence is not sufficient. It must always be borne in mind that our organic law is not like the Federal Constitution, a grant of power, but is simply a limitation upon power which the Legislature otherwise possesses. State ex rel. v. Burton, 266 Mo. 717; State ex rel. v. Locker, 226 Mo. 393. (8) Where the constitution, in defining the jurisdiction of courts, uses no words of restriction, the Legislature is authorized to confer upon them or the judges thereof, other duties, powers and functions. State ex rel. v.

Tincher, 258 Mo. 1.   (9) The defendant is not a necessary. nor a proper, party to this action, and there is a defect of parties defendant. "The general rule is that all parties interested in maintaining a judgment should be made parties to the proceedings to vacate it." 15 Standard Encyclopedia of Procedure, page 208; Turner v. Jordan, 67 Ga. 604; Ferguson v. Smith, 10 Kansas, 394; Bevere v. Beardmore, 40 Ohio St. 70-79.   (10) The parties in interest, in a proceeding in an inquest *de lunatico* under our statute, is first the public at large, that it may not suffer in person or property from the dangerous vagaries or mania of the individual alleged to be of unsound mind, and second, the alleged insane person. State ex rel. v. Guinotte, 257 Mo. 1. (11) The plaintiff was and is not without a remedy at law.   An appeal from the judgment in the insanity proceedings in the county court could have been prosecuted to the circuit court of Lawrence county. R. S. 1909, section 3956.   A writ of error from the circuit court could have been prosecuted at any time, as a matter of right, within ninety days from the judgment in the insanity proceedings. R. S. 1909, sections 2055 and 2056.

The effect of the judgment in the insanity proceedings was to subject plaintiff to confinement and treatment in the state hospital, and the law provided for his discharge therefrom by the superintendent thereof when in the judgment of that official the reason of plaintiff was restored. R. S. 1909, Section 1404.

FARRINGTON, J.—The plaintiff brings this cause to this court on the action of the trial court in sustaining a general demurrer to his petition, which petition reads as follows:

"Comes now the plaintiff, Joseph M. Painter, and for his amended cause of action represents and shows to the court that on the—day of January, 1917, the defendant 'filed an affidavit in the County Court of said Lawrence County, Missouri, alleging that the plaintiff herein was insane, and thereupon the County Court of said Lawrence County, at a special session of said court,

called at the time therefor, issued its process and writ directed to the sheriff of said county under and by virtue of which the said sheriff arrested and took this plaintiff into custody and brought him into said court.

That the said County Court further on said day caused a jury of six men to be impaneled and witnesses to be examined to inquire into the sanity of this plaintiff.

That plaintiff was at said time and had been for a long time ill and when the sheriff came for him was confined to his home and to his bed.

That neither on the trial in said court nor before that time did the physicians who testified, make any physical examination of this plaintiff, nor did any physicians afterward make any physical examination of plaintiff, nor subject him to the tests commonly used, and which are recognized generally by the medical profession as determining the mental condition of one, although plaintiff expected and offered the opportunity for such examination.

That plaintiff was not given the opportunity to obtain witnesses he desired to be heard in his behalf.

That by the verdict of said jury of six men, so called, in said court, plaintiff was found to be insane, and the said County Court rendered judgment in accordance with said purported verdict, and by its order and judgment committed and sent plaintiff to the asylum for the insane at Nevada, Missouri, where he was confined for many months. That a physician's certificate was taken by the sheriff and sent by the county court with its order and judgment to the officers of said asylum which certifiicate stated that plaintiff was affected by insanity due to the use of drugs. That in deed and truth this plaintiff was not at said time addicted to the use of drugs, either opium, morphine or similar drugs, nor did he use them.

Plaintiff further states that at the time of the institution of said proceedings and at all times since, he

was and has been sane and in the full and complete use and enjoyment of all his mental faculties.

That at the time of the institution of said proceedings and the prosecution and course of the said trial and the return of the said verdict and the rendition of the said judgment therein, and all the proceedings thereunder, the said County Court had no power nor authority nor jurisdiction to entertain, take cognizance of hear or take any action, issue any process or make any orders whatever in or about said proceedings to determine the sanity or insanity of this plaintiff and all of the acts, proceedings, writs, process, orders, in or about or touching the said matter and the verdict returned and the judgment rendered, were and are null and void.

Plaintiff further states that he is a physician and surgeon and for many years prior to the said proceedings had been practicing his profession, and had enjoyed a good reputation as a physician and surgeon, and a remunerative practice therein, and the plaintiff has no other means of support than the practice of his profession, and that since his discharge, defendant and her relatives, for the purpose of injuring plaintiff and preventing him from pursuing his said profession, have spread reports that the plaintiff had been adjudged insane and is therefore not a proper person to be employed as a physician and surgeon.

Plaintiff further states that the existence of said judgment and the said acts have cast such a shadow and cloud upon plaintiff, as to a large measure destroy his usefulness in the practice of his profession, and deprive him of the means of making a living.

That plaintiff is without any adequate remedy at law.

Wherefore, he prays the decree of this court, that the said judgment and all acts, proceedings, writs, process and orders in the said County Court in and about the said matter be declared void, annulled, and for naught held and that his *status,* to such an extent as

may thereby, be restored, and for all equitable relief to which plaintiff may be entitled in the premises.''

1.   In appellant's statement of his case he submits that its determination will depend upon the construction to be given section 34, Article 6, of the Constitution, in which he contends that exclusive jurisdiction to inquire into and adjudge persons of unsound minds is vested in the probate courts of this State.   He also mentions in his statement that a question of defect of parties was raised in the trial court.

The respondent points to Section 1411, as amended in 1911, Session Acts, page 115, and the new section passed in lieu of Section 1411 as shown on page 182 of the Laws of Missouri of 1919, and to Section 36, Article 6, of the Constitution of Missouri, as authority for the action of the County Court of Lawrence County in finding that the plaintiff was of unsound mind and that he had not an estate sufficient to support him at a State hospital.

The statement of facts contained in plaintiff's petition, and relied upon as a cause of action, is without precedent so far as the briefs of attorneys disclose and the independent investigation made by this court.

Appellant relies principally upon the argument that the case of Redmond v. Railroad, 225 Mo. 721, 126 S. W. 159, holds that the exclusive and sole jurisdiction to investigate the sanity of citizens of Missouri is vested in the probate courts under the Constitution. However, on reading that case we conclude that on this question the Supreme Court merely held that the legislature could not deprive the probate courts of Missouri of the jurisdiction to try insanity cases. This case, or no cases cited by appellant go to the extent of holding that exclusive jurisdiction if this particular is given by the Constitution to the probate courts.

On turning to the Constitution again, to ascertain the authority given the county courts under Section 1411, as amended, to Section 1423, Revised Statutes of 1909, we find

that the Constitution in Article 6, Section 36, has vested county courts with the jurisdiction to transact all county "and such other business as may be prescribed by law."

It is held that implied limitation to the legislative powers to enact statutes must be so clear and unmistakable as to make possible no other reasonable construction of the language used than that the power to enact the statute does not exist. [See State ex rel. v. Burton, 266 Mo. 1. c. 717, 182 S. W. 746; State ex rel. v. Locker, 266 Mo. 1. c. 393, 181 S. W. 1001; State ex rel. v. Tincher, 258 Mo. 1, 166 S. W. 1028.]

We therefore hold that the Constitution did not confer exclusive jurisdiction to try insanity cases in the probate courts of Missouri, and that the Legislature has conferred such jurisdiction in certain cases on county courts under Section 36, Article 6 of the Constitution. It will be observed on reading the act conferring this jurisdiction upon county courts that they are, in the main, making an investigation as to whether certain people are entitled to be sent to the State hospital at public expense.

2.   We are further of the opinion that if there was a want of jurisdiction in the county court, or there was such a failure in the procedure before it as to render the judgment void, a suit such as is attemped to be brought here would not be the way to correct it, and this for the reason that the proper parties are not before the court and probably could not be brought before the court in an independent action like this. It has been held, in the Matter of Crouse, 140 Mo. App. 545, 120 S. W. 666, that an appeal will not lie from a judgment of a probate court to a circuit court in a proceeding directly connected with the adjudication of the soundness or unsoundness of mind, but that irregular proceedings in such cases may be reached by writ of *certiorari*. We can think of no reason that would make the judgment of the county court in this particular any different from that of a probate court.

As held in the case of State ex rel. v. Guinotte, 257 Mo. 1, 1. c. 11, 165 S. W. 718:

"Who are the parties in interest in an inquest *de lunatico* under our statute? Manifestly, (a) the public at

large, that it may not suffer in person or property from the dangerous vagaries or mania of the individual alleged to be of unsound mind, and for that such person by a dissipation of his property, may not become a charge upon the public purse, and (b) the person whose mind is under suspicion, the alleged crazy person, that he may not suffer from the detention of his property or person in the custody of another. If there be others who are interested, in reason, they fall into the class of the general public, already mentioned, or they fall out of consideration because they act from sinister personal motives of self-interest, not fairly to be taken into account as producing an interest in the law to be reckoned with here."

From this we see that under the rule declared the proper parties who were interested in the proceeding had in the county court of Lawrence county were the defendant and the public at large, represented and protected by the County Court.

A writ of *Certiorari* would not only have tested the same question sought to be tried here, but would have brought into court those parties most interested in the proceeding. The statutes, in proceedings of this character, as well as in the probate court, provide that the machinery of the law may be set in motion by an affidavit in the nature of an information by any citizen residing in the county. If the party filing the information has not sufficient interest in the determination of the proceeding to dismiss it or cause the inquisition to cease, then such party would not be a proper party to make defendant in an independent suit to set it aside.

We are cognizant of the holding of the St. Louis Court of Appeals in the case of State ex rel. v. Dickman, 175 Mo. App. 543, 157 S. W. 1012, which opinion was delivered in point of time nearly a year prior to the case of State ex rel. v. Guinotte, As we construe the Dickman case, however, it goes no farther than holding that the party filing may cause testimony to be produced to uphold the complaint made. Owing to the peculiar nature of this character of cases, there being no public officer designated by statute to represent the public in the produc-

tion of testimony and trial of the cause such as in criminal cases, it must almost of necessity be held, as was done in the Dickman case, that the citizen filing the complaint has power to require the production of testimony to support that complaint. That right, however, in the light of the Guinotte case is not sufficient to make such complaining witness the defendant in an independent action, such as is the case at bar. This also disposes of appellant's contention that the proceeding was irregular as to the jury trial in the insanity proceedings, as such question could have been raised and disposed of in a *certiorari* proceeding where all of the neccessary parties could have been in court directly or by representation.

3.    Plaintiff's petition shows that he is no longer being held by any process of law under the judgment of the county court complained of, nor is there any property right of his in anywise affected. He is not seeking to get from under a judgment which is exercising any authority or control over him at this time, but wants a judgment set aside and annulled which is no longer operative in law or process. His petition, at best, borders closely on to a moot question. It has been held that "a moot case is one which seeks to determine an abstract question which does not rest upon existing facts or rights." [See Ex parte Steele, 162 Fed. Rep. 694, l. c. 702. Also, Adams v. Union Railroad, 21 R. I., 134, 42 Atl. 515, 44 L. R. A. 275.].

The judgment or order of the county court he asks to be annulled is wholly inoperative at his time, and was when first rendered not such an order or final judgment as was *res judicata.* [State ex rel. Nolte v. McQuillin, 246 Mo. 586, l. c. 595, 151 S. W. 444.].

We, therefore, conclude that the trial court's action in sustaining the demurrer was in all respects proper, and the judgment is affirmed. *Sturgis, P. J.,* and *Bradley, J.,* concur.