John H. Dowdall, Appellant, v. Hon. Gilbert K. Hutchens et al., Appellees.

Gen. No. 8,499.

Opinion filed April 14, 1931.

John B. Dale and W. L. Mason, for appellant.

Gilbert K. Hutchens, *Pro Se.* E. J. Coyle, State's Attorney, A. B. Johnson and Thomas Henshaw, for appellees.

Mr. Presiding Justice Shurtleff delivered the opinion of the court.

This was an action at law by petition for mandamus filed by appellant against appellees in the circuit court of Greene county to the September term, 1930.

The pleadings in the case consisted of the petition and appellees' demurrer, which was sustained by the court. The appellant elected to stand on his petition, and a judgment of dismissal was entered.

It is set forth in the petition for mandamus that appellant, John H. Dowdall, was adjudged insane on July 30, 1930, by judgment entered in the county court of Greene county on said date, of which court the appellee Honorable Gilbert K. Hutchens was judge, and the appellee Leven M. Dowdall was at the same time, by virtue of said judgment, appointed conservator of the estate of the appellant, and appellee W. F. Dowdall was the petitioner in the proceeding in the county court in which said judgment was rendered. It appears from the allegations of the petition that the judgment was rendered on July 30, 1930, as aforesaid, during the June law term of the county court and at the July probate term of the county court, both the June law term of the county court and the July probate term of the county court being current at the same time; that on the 29th day of August, 1930, at the June law term, 1930, of the county court, appellant applied to the county court for a new trial, which was denied him; that on October 13, 1930, still during the June law term, 1930, of the county court, appellant filed his application to the county court and to the appellee Hutchens as judge thereof, for an appeal to the circuit

court of Greene county from the judgment adjudicating him insane; that said appellee Hutchens refused to allow said appeal and refused to fix the bond and security required of appellant on said appeal.

Appellant further states in his petition that said appeal, having been prayed for before the expiration of the June term of the county court, during which term of court the judgment against him was rendered, his application for appeal was presented in due time, and that by reason of the refusal of his application for appeal he is without remedy save by the issuance by the court of a writ of mandamus.

The appellees filed a demurrer on three grounds, the first being in the nature of a general demurrer on the ground that appellant was not entitled under the facts stated to any relief; the second being that the appellant, John H. Dowdall, having, according to the petition, been adjudicated insane, cannot maintain the action; the third being that the appellees Leven M. Dowdall and W. F. Dowdall are not necessary parties.

The question presented below on the general demurrer was, whether or not appellant's application for appeal to the judge of the county court of Greene county from the adjudication of insanity was presented too late, inasmuch as the current probate term of the county court—that is, the July probate term—adjourned on the day after the adjudication and before the application for appeal was presented, or, whether the appeal should be regarded as having been applied for in due time because adjudication was during the June law term of the county court and that term had not yet adjourned at the time the application was presented.

The circuit court of Greene county sustained the demurrer and appellant having elected to stand on his petition, final judgment of dismissal was entered against him.

The error relied on for the reversal of the case is that the court erred in sustaining the demurrer and in dismissing the petition.

It may be as well to dispose of the minor questions first. Appellees contend that appellant, having been found to be incompetent and insane, is incompetent to commence or bring any action at law. Appellant, under the statute, is given the right to appeal. This right presumes, also, the right to bring any action necessary to compel an appeal. *McCullough v. Judson,* 327 Ill. 381.

Appellees further contend that appellees Leven M. Dowdall and W. F. Dowdall were not proper parties and, therefore, the demurrer should have been sustained. In actions of mandamus section seven of chapter 87, Cahill's St. ch. 87, ¶ 7, provides: "If after the filing of any such petition, any other person than the original defendant shall appear to the court to have or claim any right or interest in the subject matter, such person may be made a defendant." This follows only the general rule of all litigation, that all interested persons should be made parties to the proceeding. Appellee W. F. Dowdall instituted the proceeding in the county court and, of course, is an interested party in the proceeding to adjudge appellant incompetent and insane. He should defend this proceeding. Appellee Leven M. Dowdall is an interested party, inasmuch as he bases his right of appointment as conservator upon the judgment from which appellant is attempting to appeal. Neither of the appellees Dowdall should abandon the case to appellee Hutchens, who was a mere constructive actor to enter such order as he was advised by the parties should be entered. We hold in this case that all of the appellees were and are interested parties to the writ of mandamus. Was appellant within his legal rights and period in praying an appeal? The answer to this question is to be deter-

mined from ascertaining whether appellant was adjudicated an incompetent person and insane in the county court or probate court of Greene county. The question arises at the outset as to the jurisdiction of the probate court and the county court to adjudicate and determine the question of the insanity of the appellant. The sections of the constitution bearing upon this question are as follows: Section eighteen of article six as to county courts provides:

"County courts shall be courts of record, and shall have original jurisdiction in all matters of probate, settlement of estates of deceased persons, appointment of guardians and conservators, and settlements of their accounts, in all matters relating to apprentices, and in proceedings for the collection of taxes and assessments, and *such other jurisdiction as may be provided for by general law.*"

Section twenty of article six provides for the establishment of a probate court in each county having a population of fifty thousand, and provides:

"Said courts, when established, shall have original jurisdiction of all probate matters, the settlement of estates of deceased persons, the appointment of guardians and conservators and settlement of their accounts; in all matters relating to apprentices, and in cases of the sales of real estate of deceased persons for the payment of debts."

No authority is granted to the legislature to extend the jurisdiction of probate courts as was done in the case of county courts, and the court said in *First State Bank of Steger v. Chicago Title & Trust Co.,* 302 Ill. 77, 83, "This jurisdiction cannot be extended by the legislature to other and different matters than those therein specified." Under section 175 of chapter 37 (Cahill's St. ch. 37, ¶ 202; Smith-Hurd Rev. Stat. 1929), the legislature provided that county courts should have jurisdiction of probate matters in sub-

stantially the same language as provided in the constitution, *supra,* as to probate courts. The term "probate," in common usage, is often used with reference to the proceedings incident to the administration and settlement of the estates of decedents (50 Corpus Juris, 423); likewise, in common usage, is often used as applying to any of the incidents of administration. *Dibble v. Winter,* 247 Ill. 243. In Corpus Juris, vol. 32, page 628, is given somewhat of the law as to jurisdiction over lunatics in the earlier times. "In England, at an early period, the king's power over insane persons as *parens patriae* was delegated to the chancellor by an instrument called the 'sign manual,' the chancellor acting as the personal representative of the crown, and the authority being exercised by the chancellor alone, and not by the court of chancery. To save repeated applications to the crown the authority was delegated to the chancellor on his coming into office. The English chancery jurisdiction in lunacy is therefore in theory distinct from the general chancery jurisdiction under the great seal, although, the fact of insanity having once been adjudicated, the chancellor thereafter acts, in the superintendence of the lunatics' custodians, not under the king's 'sign manual,' but by virtue of his general equity powers. At common law, insane persons were the particular wards of chancery. There has been considerable discussion as to whether those courts which have general equity jurisdiction possess by virtue thereof inherent jurisdiction in lunacy. Many cases hold that in the absence of legislation on the subject courts of general equity jurisdiction may exercise jurisdiction over the person and property of persons of unsound mind. (*Dodge v. Cole,* 97 Ill. 338), but there are decisions to the contrary. However, at the present time, the question of jurisdiction of lunacy proceedings or proceedings for the appointment of committees or guardians is regulated by

statute, both in England and in the United States; and in accordance with these provisions it may be exercised by particular courts therein designated, as for instance, courts of chancery, circuit courts, county courts, district courts, probate courts, and courts of record having general original jurisdiction; but it must be exercised by a court on whom it has been conferred. In some jurisdictions it is held that, where the power to appoint guardians has been conferred on courts other than courts of chancery, the power is cumulative and concurrent with the court of chancery. On whatever court the authority is conferred, it exercises the power under the same rules as appertain to and regulate the jurisdiction of chancery, subject to such statutory provisions as are contained in the legislative enactments.''

This original jurisdiction in the chancellor and in the court of chancery was recognized in this State in *Dodge v. Cole, supra,* where the court held, page 354:

''It is conceded that the power exercised by the Lord Chancellor of England, over the persons and estates of lunatics and idiots, was, in early times, when the jurisdiction of the High Court of Chancery was very limited, conferred upon him by special grant from the crown, and was not, except, perhaps, to a limited extent, referable to the general powers exercised by him in his character of Chancellor. We also understand, that in theory of law, the State, in its character of *parens patriae,* may rightfully exercise the same power and control over the persons and property of lunatics and idiots, that was exercised by the Crown of England through the Lord Chancellor, at the period referred to. We further understand, that under the constitution of 1818, and the statutes in force at the time of the sale in question, the circuit courts of this State possessed original jurisdiction in all matters . . . in chancery, as the same had been previously exercised

and understood in the courts of this country and England, having general chancery powers, and that they possessed no other or further powers or jurisdiction.''

It is to be noticed that in the English system, as cited, one jurisdiction determined the question of sanity, whereupon, on being found insane, the chancellor, in the care of his estate, acted by virtue of his general equity powers. In *Painter v. Painter* (Mo. App.), 228 S. W. 538, the court held: ''Const. art. 6, sec. 34, giving the probate court jurisdiction, does not exclude like jurisdiction in the county court by virtue of section 36, giving the county court jurisdiction of all county . . . and such other business as may be prescribed by law.'' So we find that at common law the inquest of insanity was determined by the chancellor, acting as the personal representative of the crown and thereafter upon inquest found the estate was managed and controlled under the general equity powers of the court of chancery. In the common law system in England the probate of wills and the settlement of decedents' estates was under the jurisdiction of the ecclesiastical courts, and we find little in the ancient laws to throw light upon the subject of an inquest of lunacy being a matter of probate; we are left to follow the language of the constitution and the laws of the State as passed by legislative authority.

Under the provisions of the constitution as to probate courts, the court, in *Ure v. Ure,* 223 Ill. 454, *Snyder v. Snyder,* 142 Ill. 60, and *Sippel v. Wolff,* 333 Ill. 284, 291, has held that: '' 'The jurisdiction of a court of probate over the estate of an incompetent ward is equitable. In this country the probate court exercises the equitable jurisdiction over the property of the insane and mentally incompetent exercised by the English court of chancery. It has power to order that done which is for the best interest of the estate of the ward, and we perceive no good ground for saying

that because the election is made personal to the spouse the probate court cannot exercise power to elect for such spouse when the latter is mentally incompetent and is a ward of the court.' '' It seems to be held without discussion that the power to appoint a conservator carries with it the implied power to declare a person insane. Under these decisions it cannot be contended but that the probate court or the county court, exercising probate jurisdiction, did have the power to hear this cause. Likewise, under the powers in the constitution conferred upon county courts, the legislature enacted chapter 86 of the Revised Statutes, in which sections one, two and thirty-eight, respectively (Cahill's St. ch. 86, ¶¶ 1, 2 and 38), vest the county court with jurisdiction to determine when a person shall be an insane person, who, by reason of unsoundness of mind, shall be incapable of managing and caring for his own estate, and in the later section county courts are vested with jurisdiction to determine when the same person, having had a conservator appointed, shall be restored to his reason. No such acts have been passed conferring jurisdiction upon the probate courts. Section two of the same act provides: ''If a person has been adjudged insane or feeble-minded in the county court, the person petitioning the probate court to appoint a conservator of such insane or feeble-minded person may file in the probate court a duly certified copy of the record of the said county court in such proceeding,'' etc., all of which accentuates the purpose of the legislature to vest the county courts with jurisdiction to hold inquests of insanity. In fact, chapter 85 of the Revised Statutes, which treats of the insane dangerous to themselves or others, gives the jurisdiction over the persons of insane not charged with crime to the county court, by sections three and thirteen. It appears by the petition in this cause that the summons was served upon appellant in the county

court on July 26, 1930, and the cause was heard and a trial had upon July 30, 1930, resulting in a verdict and finding that appellant was an insane person and a conservator was appointed. The appointment of a, conservator was immaterial. The finding that appellant was an insane person was the result of the action and the basis of appeal. (*Morrison v. Beers,* 327 Ill. 139, 141; *McCullough v. Judson,* 327 Ill. 381, 386.) It is immaterial, of course, that under the contention of appellees appellant had only five days in which to appeal. From the petition in this cause it is impossible to determine whether the petition for inquest of insanity was presented to the court as a court of law or the county court, or to the county court sitting as a court of probate. From the history, its more natural place of jurisdiction would be in the county court under its statutory jurisdiction. The whole question, however, seems to have been settled by statute and construction. Cahill's St. ch. 37, ¶ 203; section 176 of Smith-Hurd's Rev. Stat. chapter 37, provides as to probate terms: "and all matters cognizable at such probate terms shall also be cognizable at the law terms of such courts." In *Callon v. City of Jacksonville,* 147 Ill. 113, the city presented its petition for a special assessment to the probate term of the county court, as under the statute it had a right to do. The matter was completed at a law term of the court. It is held:

"The first point made is, that no order having been made expressly transferring the cause in relation to the supplemental assessment to the common law docket, the County Court, sitting as a court of law, had no power over it, and that its order of confirmation was therefore without jurisdiction and void. In this view we are not prepared to concur. The County Court, when holding law terms and when holding probate terms, is the same court, and does not constitute two distinct tribunals. True, when holding a law term,

it is vested with power and jurisdiction over matters pending before it which it cannot exercise when sitting as a court of probate. And when sitting as a court of law, it has authority to hear and dispose of all matters pending before the court which come within its proper cognizance as a court vested with common law jurisdiction. But it requires no order transferring to it matters already pending in court. They are already before it, and if they constitute matters which properly come within its jurisdiction at a law term, they are, by virtue of the mere fact that they are pending in the court, subject to be disposed of at such term.'' And in the same case the court said: ''In *City of East St. Louis v. Wittich,* 108 Ill. 449, it was held that, inasmuch as it is expressly provided by statute that in proceedings for the confirmation of assessments, 'the hearing shall be conducted as in other cases at law,' the application can be heard only at a law term, as only at such terms can cases at law be heard. But in *Murphy v. City of Peoria,* 119 Ill. 509, it was held that, under the statute, the County Court might appoint the commissioners at a probate term, although the final hearing of the application has to be had at a law term. When the law term convened, the application for confirmation in this case was pending in court, and subject to disposition at that term, and it required no order transferring the proceeding from the probate to the law side of the court to give jurisdiction.''

In the strict language of the statute, the matter being cognizable at the probate term, if it be conceded it was in the probate term, was also cognizable at the law term, and the end of the probate term did not complete appellant's period in which to appeal. This construction appears to have been given to these various statutes by Mr. Justice Dibell in *Pence v. Pettett,* 211 Ill. App. 588, and was followed in *Knox v. Maher,* 254 Ill. App. 626.

The cases cited by appellee do not appear to be in point. In *McFarland v. McFarland,* 4 Ill. App. 157, the question was not raised. *Rittmiller v. Overmass,* 189 Ill. App. 73, and *Johnson v. Kilpatrick,* 250 Ill. App. 416, each arose in counties in which there was an independent probate court established. In *Pence v. Pettett, supra,* Justice Dibell said:

"This does not create any new or unusual condition, for section 124 of the administration act contains a general provision for appeals differing from that of section 68 in regard to appeals from the allowance or rejection of claims. Until the Probate Court Act was passed, the administration of the estates of deceased persons had been for many years conducted in the county courts and is yet so conducted in most of the counties of the State; yet the County Court Act in section 122 has a general provision for appeals upon appellant giving bond and security in such amount and upon such conditions as the court shall approve." If the cause in which appellant was tried, even though a probate cause, was cognizable at the law term of the court, the appeal, being a part of said cause, was also cognizable at the law term of the court. If the matter was presented to the county court, as would appear more consonant with reason, appellant's period to appeal had not expired.

For the reasons stated, the court erred in sustaining appellees' demurrer to the petition, and the judgment of the circuit court of Greene county is reversed and the cause remanded, with directions to overrule the demurrer and require appellees to answer the petition.

*Reversed and remanded with directions.*